1  Wanda Savage

2  4353 Enoro Drive

3  Los Angeles, CA   90008

4  (323) 348-9634

5  Plaintiff in Pro Per

6

7

8

9              UNITED STATES DISTRICT COURT

10            CENTRAL DISTRICT OF CALIFORNIA

11   LACV14-7709 FMO (VBKx)



12  Wanda Savage,                        Case No.: Insert Case Number

13              Plaintiff,               **COMPLAINT**

14        vs.                            **Failure to Accommodate with**

15  Sylvia Burrell, Secretary, U. S.     **Failure to engage in interactive**

16  Department of Health and Human       **process; Age, Race, Gender (female)**

17  Services; Jay Petillo; Nicole Lurie; **and Disability Discrimination; Non-**

18  George Korch; Edward Gabriel; Alyce  **Selection; Directed Reassignments;**

19  Bridges; Benjamin Goldhaber; Denise  **Disparity in Treatment, Disparity in**

20  Carter-Wells; Maria Price-Detherage; **Impact; Hostile Working**

21  Antonia Harris; Jacqueline Clay; Bonita **Environment; Telework ;**

22  White; Rob Edwards; Christine Smith   **Harassment; Retaliation; Failure to**

23  and Joyce Cooper ,                    **Follow Department of Labor Laws;**

24              Defendants.               **Constructive Suspension; Failure to**

25                                        **to follow FOIA regulations; and**

26                                        **Prohibited Personnel Practices.**

27

28                                        **DEMAND FOR JURY TRIAL**

Complaint

1

### Jurisdiction

1. This court has jurisdiction under 28 U.S.C. 1331.  Federal question
   jurisdiction arises pursuant to Rehabilitation Act of 1973 , 29 U. S. C. 791,
   Section 501 ; Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000
   including Section 717 42 USC 2000e-16;   Age Discrimination in
   Employment Act of 1967; Equal Pay Act of 1963, Title 29, subtitle B ,
   Chapter XIV, Part 1620; Fair Labor Standards Act of 1938 29 USC 631,
   633a; Executive Order No. 13163 dated July 26, 2000, 65 F.R.46563;
   Executive Order 13164 dated July 26, 2000, F.R. 46565;  Executive Order
   No. 13548 dated July 26, 2010, 75 F.R. 45039 ; Occupational Safety and
   Health Administration (OSHA) Regulations  29CFR part number 1960 ,
   Subpart 1, Standard Numbers 1960.72  (a-c) and 1960.30 (a-f),· 1960.29 (a-
   d), 1960.9, 1960.68, 1960.73 (a-c), 1960.55 (a-b), 1960.69, 1960.10 (a-d),
   1960.28 (a-(e)(2), 1904.4 a-(b)(2), 1904.5 a-(b-7) ; Occupational Safety and
   Health Act of 1970 as per 29 U.S.C. 651,652,653,657,660; 3 U.S.C. Code
   425 with Public Law 113-142 and 29 CFR Part 1977 which addresses
   Discrimination  against employees exercising rights under the William
   Steiger Occupational and Health Act of 1970; and Procedures for processing
   FOIA requests in CFR Title 34, subtitle A , part 5, Subpart c, Section 5.21

and  5 U.S.C. 552 (a) and 20 U.S.C. 3474.; Personnel Guidelines in 5 U.S.C. 3341, 3341, 3345-3349 and 3371-3376; 5 CFR Parts 317 and 352,  and Federal Personnel manual chapters 300 (subchapter 8), 334 and 352; 29 C.F.R. 1613-701-1613-709; 29 CFR 1607.11; Title 42-chapter 21, Subchapter VI 2000e-2; title 41, Subtitle B, Chapter 60, Part 60-3, Section 60-3.11; 41 CFR 60.3.11; 5 U.S. Code 2302 ; sections 12 and 15 of the Age Discrimination Act of 1967 (29 USC 631, 634); Fair labor Standards Act of 1938 29 USC 206 (d); Title 42, Charter 1, Subchapter VI 2000e-2.; 42 USC 12112(b); 20 CFR 726.7 and 726.6, part 726 and 20CFR Part 10- Claims for compensation under the Federal Employees' Compensation Act; 5 USC 301, 8102a,8103,8145 and 8149; 5 US Code 8103; EEO Regulations 29 CFR, Part 1614, Section 102 (a) (3); Public law 106-346; Public Law 111-292, Telework  Enhancement Act.

## Venue

2. Venue is proper pursuant to 28 U., S.C. 1391 because the events giving rise to this complaint started in this district and Plaintiff resides in this state.

## Parties

3. Plaintiff  Wanda Savage resides at 4353 Enoro Drive, Los Angeles, CA 90008

4. Defendant Sylvia Burrell, Secretary, U.S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

5. Defendant is currently employed as Secretary of U. S. Department of Health and Human Services 200 Independence Avenue SW, Washington, DC 20201.

6. Defendant Jay Petillo is the Director of OFPA, Office of Financial Planning and Analysis and the same department previously titled RPE, Resources Planning and Evaluation.    The address is U. S. Department of Health and

Human Services at 200 Independence Avenue SW, Washington, DC 20201.

7. Defendant Alyce Bridges, Director of Workforce Development.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

8. Defendant Ben Goldhaber, Chief Operating Office of ASPR.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

9. Defendant Nicole Lurie, Assistant Secretary of Preparedness and Response.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

10. Defendant Bonita White, EEO Director.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

11. Defendant Maria Price-Detherage, Deputy Director Human Resources.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

12. Defendant Denise Carter -Wells, Assistant Secretary Human Resources.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

13. Defendant Christine Smith, Reasonable Accommodations Coordinator.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

14. Defendant Antonia Harris, Human Resources Director.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

15. Defendant Jacqueline Clay, Director of Human Resources.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

16. Defendant George Korch, Acting Principal Deputy Secretary, ASPR.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

17. Defendant Joyce Cooper, Program Analyst, Workers Compensation, Human Resources.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

18. Defendant Edward Gabriel, Principal Deputy Secretary, ASPR.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

19. Defendant Rob Edwards, Manager Worker's Compensation, Human Resources.  The address is U. S. Department of Health and Human Services at 200 Independence Avenue SW, Washington, DC 20201.

### Statement of Facts

20. Plaintiff is an African American female over 40 who has the disabilities of herniated discs and sprains of the cervical, thoracic and lumbar spine; bilateral knee patellofemoral chondromalacia and meniscal tears; right knee contusion, contusion of left chest wall; sprain of hand; sprain of elbow and forearm of right elbow as work related disabilities.  Plaintiff also suffers from depression and anxiety (at this point not established as work related).  Plaintiff began her stellar federal employment career in April 1991.  In February 2007, Plaintiff was a supervisor employed by the Department of Housing and Urban Development (HUD).   While on a business trip visiting her subordinates in northern California, Plaintiff was in an auto accident.  A truck hit Plaintiff's rental vehicle from the rear.   As a result, the conditions previously noted were accepted as work related by the U. S. Department of Labor (DOL).

21. In September 2008, Plaintiff accepted the position of Senior Management Analyst, Team Leader, GS 15, job series 0343 at the U. S. Department of

Health and Human Services in Washington, DC.   This top secret security position was a non-managerial, non-supervisory position within the division of ASPR (Assistant Secretary of Preparedness and Response.  The job was located in the section of Management Assurance which was newly created to ensure proper controls were in place for risk management and to reduce financial risks for selected (by Office of the Secretary) business functions in the section of RPE, Resource Planning and Evaluation (later to become OFPA, Office of Financial Planning and Evaluation). The compliance and documentation of selected/designated business processes and controls were documented, reviewed and tested for results to be reported ultimately to OMB (Office of Management and Budget) via a Statement of Assurance (SOA) which was sent to the Secretary of the Agency (U.S. Health and Human Services) and subsequently to OMB. There were timelines throughout the year for all of the results to be submitted culminating in the final submission of the SOA in September of each fiscal year.

22. In September 2008, the Management Assurance Team was composed of six headed by Brian Sparry, white male, non-disabled at the time, Deputy Director (Supervisory Management Analyst), GS 15, and job series 0343, Top Secret clearance required. Mr. Sparry reported to Jay Petillo, Director of Resource Planning and Evaluation (RPE), (later OFPA, Office of Financial Planning and Analysis).  Plaintiff, Wanda Savage, reported to Mr. Sparry.  Originally the Management Assurance staff reported to Ms. Savage.  The staff consisted of two GS 14s, job series 0343 named Shaniqua Jenkins, African American female, non-disabled and Philip Wise, white male, non-disabled.  The staff also included two GS13s, job series 0343 named Diana Woodfolk, African American female, non-disabled and Cynthia Thomas, African American female, non-disabled.  None of the

employees were prior employees of ASPR and 3 (including the Plaintiff) came from other federal agencies.  Therefore the business processes/functions were new to all of us.   Mr. Petillo also brought on full time analysts from the Deloitte Consulting firm to aid in the execution of duties.

23. The Management Assurance team was dysfunctional from the onset due to numerous and significant absences of Mr. Sparry due to reported illnesses and legal issues.  Mr. Sparry would supply conflicting direction from that provided by Plaintiff during Mr. Sparry's absence.  At one point, Mr. Sparry also stated that he was wearing an "ankle bracelet" to the job due to his conviction of a crime and had been assigned house arrest.  Such actions should have excluded Mr. Sparry from his position due to violation of his top secret security clearance, but Mr. Sparry he was allowed to remain in his position.   Mr. Sparry was on a PIP (performance improvement plan) but he was not fired from his position in 180 days (90 days of a poor performance plan then 90 days on a PIP).  Mr. Sparry was in his position a year and was simply transferred.  However this is the treatment the Plaintiff received when she was fired from a directed reassignment position which was not the position which she was hired to perform.  Plaintiff was only allowed to function in the position in which she was hired except for a couple of the initial months after hiring.  The working environment was caustic and further compromised by the fact Mr. Sparry reported to Plaintiff that he did not have a background or experience in the primary duties of OMB A123 (Office of Management and Budget) regulations and/or preparing an SOA. Mr. Sparry stated Mr. Petillo was well aware of this prior to him assuming the position.  The balance of the staff also reported little to no background in the subject area. Therefore, Plaintiff was the only person with a background

in the subject matter. Accordingly, for a new organization plus coupled with the numerous absences of Mr. Sparry, Plaintiff had to assume the duties to form, develop, implement and test for the SOA. Plaintiff also had to "act" (assume the duties) as Deputy Director when Mr. Sparry was absent. When Mr. Sparry returned, then Plaintiff was not allowed to work on the projects.

24. In November, 2008 Plaintiff made a verbal request to her supervisor Mr. Sparry as she required a larger monitor in her office due to her work related cervical condition. In or about a couple of weeks later in November 2008, Plaintiff followed up with Mr. Sparry as she had not received a response. Mr. Sparry stated that he had consulted with Mr. Petillo who denied the request as because all employees would have to be provided larger monitors if Plaintiff received such an accommodation. Plaintiff stated that this was not how reasonable accommodations worked. Therefore, Plaintiff again requested the accommodation. Plaintiff was advised in December 2008 to submit medical information for the request. This was a pattern of the lack of timely responses and contradictions coupled

with lack of awareness of the requirements of the reasonable accommodation process. The lack of responses, interactive process and delay in supplying reasonable accommodations/ergonomic equipment continued while Plaintiff reported to Mr. Sparry through October, 2009. This continued although Plaintiff provided a note from her orthopedic surgeon, Dr. Gleiberman on or about January 10, 2009 requesting a 20" monitor for computer use and an ergonomic study. In February 2009, Dr. Gleiberman also submitted a letter of all of Plaintiff's disabilities to facilitate Plaintiff's ergonomic requests. Plaintiff had to eventually go to her Congressman (Moran) in the fall of 2009 to request intervention to get all required ergonomic equipment.

25. On or about January ,2009 Plaintiff was provided a 2008 performance

evaluation of "Outstanding" which was the top performance ranking.  Once Plaintiff filed an EEO complaint in February 2009, this was the last time such a top evaluation was received.  Even then, Mr. Petillo stated that he would not give performance dollars to Plaintiff at that level as only a partial year had been served and therefore the evaluation had to be reduced. Plaintiff advised him that if that was going to be his "new" rule, then the lower performance award dollars would be accepted but Plaintiff did not want how performance evaluation downgraded due to such a rule.  Plaintiff felt this was a pretext to downgrade her evaluation.  Plaintiff was awarded at the fully successful monetary level versus the outstanding level.  The balance of appraisals were at the most minimal of the successful level and in 2013 an unacceptable performance rating.  The 2009 EEO complaint was discrimination related to the lack of reasonable accommodations and failure of invoking the interactive process.   Numerous other complaints regarding the same issues were submitted to the EEO office throughout my tenure at HHS.  As a result, of filing the initial EEO complaint, there was a change in the staff's and Plaintiff's reporting structure, duties and responsibilities made effective immediately after the EEO complaint was filed.  When Mr. Sparry was absent and Plaintiff was attempting to complete his work in her acting capacity, staff was permitted to deny work assignments, requests to be on e-mails, attend meetings held by Plaintiff.  Mr. Petillo would provide contradictory direction/methods for execution of duties than those expressed by Plaintiff.  Plaintiff had to meet short timelines to complete work not previously executed by Mr. Sparry, Mr. Wise and Ms. Jenkins.

26. This was so bad that on February 12, 2009, Plaintiff requested a reassignment as the job was "physically making me sick".  Mr. Petillo did not reassign Plaintiff.   This was just one of many forms of harassment

throughout the tenure at HHS.  In 2009, Plaintiff was not given telework when originally requested.  Plaintiff was denied leave (although not on leave restriction) for a medical appointment of her work related conditions. Plaintiff had to go to her Congressman Moran and engage the Director of EEO, Kendrick Gibbs to receive approval to take accrued leave.  Plaintiff was placed on AWOL (away without official leave) for 15 minutes when she asked for leave when she got back from a luncheon engagement.  Plaintiff had to wait for a train as she was using a cane and had limited mobility.

27. Plaintiff wrote Mr. Petillo an e-mail on March 19, 2009 to request a reassignment as "this daily dose of extreme stress exacerbates my work related disabilities".  Management ignored the multiple reassignments requests and placed Plaintiff's health at greater risk by not reassigning her.

28. In September 2009, Plaintiff suffered an injury to her left knee when a large boxed ergonomic chair was delivered to her office and placed up against her desk.  Plaintiff filed a CA1 for workers compensation but the agency has never (to this date) submitted this claim to Department of Labor.  The agency is prohibited by law to adjudicate any claims.  Only DOL has the jurisdiction to adjudicate workers compensation claims.

29. On November 2, 2009 Plaintiff was asked to join a meeting with Jay Petillo and Alyce Bridges to inquire if Plaintiff would act in the capacity as Acting Deputy Director as Brian Sparry had been given a reasonable accommodation reassignment.  This was done although Plaintiff had made numerous requests for a reassignment as a reasonable accommodation prior to Mr. Sparry, yet Plaintiff's requests were not responded.  Mr. Sparry complained of Mr. Petillo's management style and stated that it was causing him stresses.  Mr. Sparry was not determined to have a disability (per the Rehabilitation Act) by the FOH (Federal Occupational Health doctor), yet Mr. Sparry was given a reasonable accommodation reassignment by Mr.

Petillo.  However, Plaintiff was not provided a reassignment for the same reasons even with a disability.  As per the e-mail dated November 3, 2009, Plaintiff agreed to serve as Acting Deputy Director of Management Assurance only for a "temporary basis" until the reorganization was solidified and/or a permanent person can be assigned to the post".  There were parameters set to which Mr. Petillo agreed.  Based on these parameters, if they were not met, Plaintiff could end the assignment and go back to her position as Acting Deputy Director.  The agreement consisted of terms to note this was a contract.  There was acceptance of the parameters which made it a contract.  However the contract was not honored.  Plaintiff could not get out of serving in this capacity.  The performance plan also reflected this title and respective elements.   The position of Deputy Director of Management Assurance was not advertised.  Plaintiff had to assume the roles of the missing staff members. Plaintiff was not allowed to back fill any of the vacant positions.  The same level of contract support from Deloitte was not provided to Plaintiff as she was told there was no budget at the prior level.  Plus the only federal employee was Diana Woodfolk who admitted by her own assessment that she did not possess the skill sets for the job and had no background in the area of OMB A123 and/or completing SOAs.  Therefore, Plaintiff also had to train Ms. Woodfolk as an additional duty.

30. E-mail dated November 30, 2009 from Plaintiff to Mr. Petillo and copy Ms. Bridges reporting the continued disrespect of Plaintiff's position as Acting Deputy Director.  This including one of Philip Wise  packing up and leaving without any comment.  No action was taken against the employee.

31. On December 18, 2009, Plaintiff wrote Alyce Bridges and stated that she wanted to meet to discuss movement within this reorganization to another location within ASPR.   No jobs and/or alternate assignments were presented to the Plaintiff.

32. Plaintiff wrote an e-mail dated December 18, 2009 to Ms. Bridges stating that she wanted out of the Acting Deputy Director position. Plaintiff was not moved.

33. On December 22, 2009 there was an e-mail from Ms. Bridges to Mr. Petillo that an Acting Deputy Director of MA was not really needed? She asked if some of the duties could be given to Mr. Dolinsky, but Mr. Petillo did not accept her recommendation. There was never a request for volunteers, rotating of this assignment and/or collateral assignment of Plaintiff's acting a duty to one of Mr. Petillo's other Deputy Directors. Plaintiff was the only African American Deputy Director reporting to Mr. Petillo.

34. As per e-mail dated January 29, 2010 from her to Mr. Petillo, Plaintiff asked for another position. Plaintiff wrote "As ASPR is now planning for the reorganization, I would like to discuss my placement somewhere else." Plaintiff wrote Ms. Bridges and Mr. Petillo yet no position was offered and/or discussed with Plaintiff. She continued to have the duties and responsibilities of Acting Deputy Director imposed upon her. Plaintiff had the same responsibilities as other Deputy Directors which included amongst other duties of completing performance plans, approving leave; providing direction and setting the amount (if any) for performance awards.

35. On February 18, 2010, per e-mail Plaintiff advised Alyce Bridges there was a breech in the agreement and Plaintiff wanted to be moved out of the Acting Deputy Director position and nothing was done.

36. E-mail dated February 19, 2010 from Plaintiff to Ms. Bridges stating that there was a breech in the agreement for the basis of her taking the job on an acting basis and her desire to be moved out of the position.

37. E-mail dated March 10, 2010 from Plaintiff to Dr. Lurie stating that she wanted out of the position (as Acting Deputy Director) which she had taken only on a temporary basis- while the job was to be immediately advertised

and filled.  Dr. Lurie responded that she did not get into "Human resources issues" but she was in Plaintiff's direct chain of command and personnel issues were a part of her performance plan.  Therefore this is how Plaintiff was treated when she went to any senior management officials throughout 2010 thru 2014. This was even though Plaintiff was sick and had two work  related surgeries on her knees in 2010.  Plaintiff had reported to her managers that the working conditions were exacerbating her conditions as well as causing stress and anxiety.  However Plaintiff was not allowed to resume duties /position for which she was hired.  Instead, Plaintiff and her physician were harassed any time she was recuperating to come back to Washington, DC although she was teleworking (per doctor's orders)  from Los Angeles, CA.  Plaintiff was being cared for after knee surgery and mobility was limited.  Plaintiff's doctor stated that Plaintiff required telework.  Ms. Cooper wrote Plaintiff's doctor stating that he needed to complete additional form stating it was needed as Dr. Gleiberman stated that

Plaintiff  had to stay in California.  This was never stated by the doctor or Plaintiff.  Plaintiff's doctors were in California and assistance could be provided by family members.  The doctor only stated telework was required. There was no response to Plaintiff's  complaint of lies in a letter to her doctor.

38. Throughout 2010, the position of Deputy Director of Management Assurance was never advertised.  Plaintiff never received the level of performance awards as the other OFPA Deputy Directors. There was no SF52 or SF50 to denote the continued different job title.  Plaintiff would be minimized and not given authority to classify deficiencies as noted by the test results.

39. E-mail dated January 2, 2011 from Plaintiff to Ms. Cooper and copy Mr. Petillo, Ms. Jarchow; Ms. Bridges; Mr. Goldhaber and  Mr. Williams.

Plaintiff notes all the unjust treatment she states that she had undergone regarding her absence for work related disabilities and failure to accommodate with telework.  Plaintiff notes that she has problems in using public restrooms yet no reasonable accommodations were extended to Plaintiff.  Plaintiff reiterates all the problems which she continues to suffer. This document was copied to Secretary of DOL, Ms. Solis; DOL Claims Examiner Mr. Ely and Senator (Congressman) Feinstein.

40. E-mail dated January 5, 2011 from Plaintiff to Ms. Smith inquiring as to whether or not workers comp group has jurisdiction to come in and question that Plaintiff be provided telework – given that Plaintiff was back to work and not  collecting benefits from workers comp.  Plaintiff asks where does this state such as a HHS policy.  No response was received.  Plaintiff made contact with numerous managers and no response to how she was being treated  and/or the lack of telework being extended. No response was received.

41. E-mail dated January 6, 2011 from Plaintiff to Ms. Smith regarding lack of reasonable accommodations even if her conditions were work related.  The agency had an obligation to supply reasonable accommodations for Plaintiff even if the conditions were work related.

42. E-mail dated January 6, 2011 from Plaintiff to Ms. Smith stating that Plaintiff has back, hip and knee pain.  She notes the physical therapist has recommended more treatment.  "I fear putting more weight and time on the knee at this point will increase the pain."  Plaintiff also asks if Mr. Petillo can approve her requested and needed reasonable accommodations.

43. E-mail dated January 6, 2011 from Plaintiff to Ms. Smith regarding her reasonable accommodations requests for telework (to work at home) and the

workers compensation questions.  Ms. Smith maintained this was a worker's  compensation issue and that EEO Compliance and Operations Division "does not have authority to process workers compensation issues".

44. E-mail dated January 7, 2011 from Plaintiff to Mr. Petillo stating that it has been quite stressful in working with the worker's comp staff.  Plaintiff stated that she would be at work Monday but only under duress.  Plaintiff asked what type of reasonable accommodations would be available from Mr. Petillo.  Mr. Petillo stated that "will do whatever we can to accommodate" and would be looping in Alyce.  The pledge for reasonable accommodations were not made available to Plaintiff.  Nor did Mr. Petillo provide telework to Plaintiff.

45. E-mail dated January 7, 2011 from Plaintiff to Ms. Bridges stating "As you have noted as based on my previous e-mail, I am taking issue with workers comp on many issues.  Right now I am having problems with anyone taking ownership or willingness to respond to me".  I also included the response from Ms. Smith.  Ms. Bridges did not respond to Plaintiff either.

46. January 9, 2011 is the date Plaintiff was required to report to the Washington, DC office.  While on leave post-surgery, Plaintiff's office had been moved to an entire different building away from the other Deputy Directors and Mr. Petillo.  Although Plaintiff objected,  she was advised that this had been determined to be "in the best interest of OFPA".  Therefore Plaintiff was moved and required to walk in snow and ice to attend meetings.  Plaintiff complained to DOL, yet nothing was done.  Although

Plaintiff had been advised prior to arriving to the new office that all reasonable accommodations were in place, the Plaintiff noted this was far from the truth.  Many of the long fought previously provided

accommodations provided by CAP were missing and/or broken.  There was no large monitor to accommodate Plaintiffs cervical back disabilities. Plaintiff reported the bathroom toilets were too low for her and no raiser and/or grab bars were installed as requested.

47. E-mail dated January 10, 2011 from Plaintiff to Mr. Petillo and copy Mr. Blythe.  Plaintiff noted that she only had 17 inches of walking space due to boxes, file cabinet, another chair etc.  Plaintiff noted this was a safety hazard and that she accidently struck her knee due to the close proximity of the quarters in her walking path to the desk.  Plaintiff was forced to return to work and there was no measures to make sure that an employee using a cane after bilateral knee surgery would be returning to a safe environment free of hazards.  Even with this, Plaintiff was not allowed to telework and/or provided any alternatives for the missing and/or broken ergonomic equipment .  Once again, the Plaintiff's timely submitted CA1 was not forwarded to DOL.  This was not according to regulation.   Plaintiff was not advised the document was not forwarded.

48. An agency has an obligation to Plaintiff to return to duty within medical restrictions an employee who was voluntarily absent for medical reasons includes the duty to provide reasonable accommodations in accordance with the Rehabilitation Act, and an agency's failure to do so constitutes a constructive suspension.  This is what occurred to Plaintiff.

49. E-mail dated January 11, 2011 from Plaintiff to Mr. Petillo stating "After hitting my knee on the desk yesterday, I am having even more problems with my knee."  There was no interaction to determine accommodation and/or medical requirements.  No reasonable accommodations were approved and/or offered.   No COP (continuation of pay) was extended. Such occurrences persisted throughout the balance of the year.  Although

Plaintiff had an ergonomic review which stated that she needed telework, none was immediately provided.  There was no new office assigned to Plaintiff which could accommodate the newly cited ergonomic equipment.

50. E-mail dated January 13, 2011 from Plaintiff to Mr. Petillo advising him that her problem is beyond her knees and also includes her back and the doctor has her on restrictions "to not lift more than 10 pounds".  There were no discussions with Plaintiff on how she could effectively perform duties with such restrictions.  There was no response from human resource Defendants when Plaintiff complained of the worker's compensation and return to work regulations were not being adhered for Plaintiff.
She asked if she was expected to work without the adaptive equipment. There was no interaction to ensure Plaintiff had what was needed to minimize problems.  Job functions continued to have Plaintiff lift and carry beyond restrictions.  Plaintiff was only offered to file EEO complaints with the agency knowing this would take years to resolve.

51. In February 2011, Plaintiff filed an EEO complaint regarding the failure to accommodate issues.  In March 2011, Plaintiff was called into a meeting with Mr. Petillo and Ms. Bridges.  Mr. Petillo stated that none of the other managers within OFPA had telework and/or AWS (alternate work schedule). Plaintiff had AWS as per her agreement in November 2009.   Plaintiff was

advised that if she wanted the Deputy Director position permanently , she would have to give up AWS.  Mr. Petillo was well aware Plaintiff used the AWS days for scheduled medical appointments.  Plaintiff then stated she wanted AWS as a reasonable accommodation as this was required .  Instead of responding to this reasonable accommodation, Mr. Petillo stated the position of Deputy Director of Management Assurance would be advertised.

Ms. Bridges stated that Plaintiff would be returned to her position as Senior Management Analyst, Team Leader.   But this did not occur.  Plaintiff continued to be assigned duties and responsibilities throughout the fiscal year as Deputy Director.  The job was not advertised until July 2011.  There was never a response to Plaintiff's request for AWS to permanently have the job as Deputy Director of Management Assurance.

52. E-mail dated March 22, 2011 from Plaintiff to Mr. Petillo asking why her PMAP indicates the title as Supervisory Management Analyst.  Mr. Petillo responded the same day that "I am looping in Alyce to confirm, but believe that is your official title".   Plaintiff responds the same day " does this mean that I am no longer Acting Deputy Director"?  No response was received from Mr. Petillo or Ms. Bridges.  No position description for Deputy Director was ever received. No SF 50 or 52 was ever provided with this title. The PMAP (performance plan) was issued with the title and respective duties of Deputy Director.  Plaintiff did not sign the document when presented as she stated this was not her title but the Defendants continued to hold Plaintiff to those standards.

53. CAPTEC (Computer/Electronic Accommodations Program) Needs Assessment Summary dated May 4, 2011 outlines "it is recommended that Ms. Savage work with her agency for telework as a form of reasonable accommodation".  However, Plaintiff was not provided telework and purposely sent through a long protracted process to delay and keep Plaintiff at the job site to perform multiple jobs due to the lack of resources (to fulfill vacancies).

54. E-mail dated August 4, 2011 from Plaintiff to Mr. Blythe and copy Mr. Petillo stating that she had forwarded the telework documents.  Only after Plaintiff had completed all the primary deliverables for the year was Plaintiff

given 2 days a week telework (including the AWS day off). This was approximately 8 months after 5 days a week telework was requested after the bilateral knee surgery and added injury at work to the knee.

55. Affidavit dated September 29, 2011 by Alyce Bridges who stated that she provided management advisory services on human resources to OASPR officials, including Mr. Petillo. Ms. Bridges stated that she "advised Mr. Petillo to approve and expedite Complainant's requests for reasonable accommodation under the Americans for Disability Act (ADA) guidelines. Once approved by representatives from the Department of Labor (DOL), the equipment was provided. I was aware of the delays". This is demonstrative of the lack of integrity. First as a federal employee, Appellant falls under the Rehabilitation Act versus the ADA. Secondly there are no regulations under the Rehabilitation Act and/or agency reasonable accommodations regulations that DOL has a role in an employees' reasonable accommodations process simply because one has a work related disability. There have been no such approvals/recommendations from DOL. Plus Appellant did not sign any release to have the agency speak to DOL regarding any of Appellant's medical conditions and how those related to Appellant's disabilities.

56. EEO Affidavit dated September 30, 2011 by Mr. Goldhaber.   In the document Mr. Goldhaber replied "It is my understanding that decisions regarding specific allocation of workspace to individuals were made at the office level, in this case OFPA". Therefore Mr. Petillo did have jurisdiction over the prescribed space for Appellant. But Mr. Petillo claimed he did not.

57. Directed reassignment letter dated October 19, 2011was received by Plaintiff the next day. In the direct reassignment letter, Mr. Petillo writes "Your responsibility will continue to be to coordinate OFPA's contributions

to the ASPR records management program as described in your current HHS Employee Performance Plan, subject to any mutually agreed upon revisions". Plaintiff was assigned the position as Records management Liaison. This was the same type of change in duties Plaintiff received after she filed an EEO complaint in 2009. However, Appellant was not a records manager by specialty. Mr. Petillo stated that the Plaintiff was being reassigned "to work on her leadership skills". The letter stated that Plaintiff was being reassigned due to her expressed dissatisfaction with her position as Acting Deputy Director. Plaintiff had not expressed dissatisfaction with the job. Plaintiff had complained via her protected Title 7 actions problems the conditions under which she was made to work with lack of resources, disparity in training (from the other Deputy Directors) and resources (funds/budget, staffing levels, contract support); being made to work in a separate building; failure to have support staff co-located with Plaintiff in available space); failure to accommodate; lack of ergonomic equipment which exacerbated mental and physical conditions; disparity in allocating reasonable accommodations; disparity in awards/ performance ratings  and the failure to acknowledge and follow the original parameters under which the Acting Deputy Director position was taken and the lack of interaction in all noted areas. Therefore this was retaliation for exercising protected rights.

58. E-mail dated October 20, 2011 from Mr. Petillo to Plaintiff. This showed a denial of reasonable accommodations for telework and a different office. (These were requests from the beginning of the year.)None of the options for securing medical information was pursued yet . Appellant was denied as "your physician did not reply to FOH". However, the FOH doctor only wanted to call a physician. Ms. Smith had been advised this was unrealistic in the current medical world. In addition, there was a three hour time

difference with the FOH doctor.  There was no alternatives provided to Plaintiff in the interim until the decision was made.  Alternative measures to secure information from the doctor were not followed.  There was no provision of a document provided to Plaintiff to secure the required information. to get what the doctor required.  This would not have presented an undue hardship and CAPTEC (who were also provided medical information) had already stated this accommodation was required.  No medical records were requested although the release for such was signed. Mr. Petillo had to sign numerous medical documents as required to process DOL claims for disability.  In addition,  Plaintiff had previously submitted medical evidence to validate a disability.

59. E-mail dated October 20, 2011 1:11pm from Plaintiff to Mr. Petillo to request that Plaintiff not be moved/reassigned from the position which Plaintiff should have been "returned to (per the detail regulations) which was Senior Management Analyst Team Leader.  Plaintiff noted that the time in the job as Acting Deputy Director was quite stressful due to the lack of assigned resources.

60. E-mail dated October 24, 2011 from Plaintiff to Mr. Petillo.  Complainant requested a reasonable accommodation from the directed reassigned position.

61. In October 2011, Plaintiff filed an EEO claim on the directed reassignment.

62. Plaintiff also noted her dissatisfaction in the e-mail dated November 2, 2011 from her to Maria Price Detherage that Plaintiff did not appreciate being told by the Chief of Workforce Development  (before the reassignment) that Plaintiff could have a job reporting directly to Jay and could be in California if Plaintiff  dropped  EEO accounts.  Plaintiff had gone to Mr. Holmes to

address the lack of staffing and the stress on her health due to such constraints.  Therefore the directed reassignment was already being formed but Mr. Petillo thought Appellant would drop the EEO counts due to Plaintiff's desire to get to LA to care for her disabilities.  Plaintiff also notes on this page that "I will do what I am told while I continue to fight".  Therefore  Plaintiff was willing to take the job as Records Manager as she litigated via EEO.  The actions here are the same as those experienced by Plaintiff in 2009.  When Plaintiff filed her first EEO in 2009, Plaintiff was given new duties and responsibilities as per e-mail received from Brian Sparry on February 13, 2009.

75. E-mail dated November 28, 2011 from Mr. Petillo to Plaintiff attempting to suggest that Plaintiff was working out something with him, EEO, HR.  As Plaintiff advised him, that she had some discussions-no commitment-to Ms. Maria Price Detherage.  **No** ADR/mediation forms had been signed and/or requested of EEO for such a formal mediation.  Yet meetings were taken place with no involvement of Appellant.  Appellant was still under the assumption she was to return to Management Assurance.

76. E-mail dated December 8, 2011 from Plaintiff to Mr. Petillo requesting a new computer.  Plaintiff asked to keep her old computer as she was due a refresh to a new computer.  Plaintiff requested such as it was too difficult to disconnect all the ergonomic cords from the connections when she was to remove computer to take it home.  Plaintiff stated "I cannot crawl under the desk".

77. In January 2012 Plaintiff received another directed reassignment to Senior Management Analyst.  This was executed to "clean up" from

items noted from the filed EEO complaints from the reassignment of October 2011.

78. E-mail dated March 20, 2012 at 2:22pm from Mr. Petillo to Plaintiff and copy Ms. Smith.  Mr. Petillo stated that he would only provisionally approve leave for another 2 weeks"  when Plaintiff provided documentation of her illness. Mr. Petillo wrote "given this will be the fourth extension since January 24th, please provide additional medical documentation NLT COB Monday April 9 that supports your request for long term leave although physician's notes were submitted with each leave slip. Mr. Petillo did not state or recommend that Plaintiff apply for FMLA. This was not required of Mr. Sparry, white male when he reported to Mr. Petillo.

79. E-mail dated March 22, 2012 10:38am from Appellant to Ms. Smith and Copy Ms. Bonita White, Director of EEO.  Plaintiff requested the status of her expanded telework reasonable accommodation request.  Plaintiff also noted that she had provided almost 100 pages of medical documentation to support her claim.

80. E-mail dated March 23, 2012 4:43pm from Plaintiff to Ms. Smith and copy Ms. White.  Plaintiff noted "With all due respect, I cannot constantly be held hostage to whether or not the doctor is able to speak with my physician. " Plaintiff requests an objective process.   Ms. Smith stated that medical records directly provided by Plaintiff would not be accepted.

81. E-mail dated May 31, 2012 from Robert Scalise to Plaintiff . Mr. Scalise responded "I've received your request for documentation.  That will be forthcoming….. I didn't have the documentation in my possession". That was the response when Plaintiff went to Ms. Carter requesting that

they prove what information was provided to Appellant that the Acting Deputy Director job in 2009 was a reassignment.  The agency had nothing and therefore could not provide Plaintiff anything.  Once Plaintiff filed an EEO complaint on this, the Defendant's then stated Plaintiff never served as Acting Deputy Director of Management Assurance.

82. EEO affidavit signed January 7, 2013 by Ms. Joyce Cooper.  Ms. Cooper writes "the employee was injured on 1/10/2011 and the claim was signed by the employee on 2/9/11 and the supervisor signed on 2/18/2011.  I contacted Mr. Petillo via e-mail on 6/22/11 to inquire about the status of Ms. Savage's claim for her injury on 1/10/2011 and he responded that "I am not aware of any outstanding actions needing my attention but happy to discuss".  However even at this juncture, Plaintiff's CA1 claims were  not submitted to DOL.  On 11/19/2012 the claim for Ms. Savage's injury on 1/10/11 was received by my office and processed and submitted to DOL on 11/20/12.  I am not sure why the claim for 2011 was delayed".

83. Plaintiff  continued to have problems in receiving reasonable accommodations and proper disposition of her DOL submitted  documents throughout 2012 to 2014.   Prohibited personnel actions continued throughout 2014 which culminated in Plaintiff's removal from federal service effective May 2014.  Performance was used as a pretext for discriminatory and retaliatory actions.

### Claim 1

84. Violation of Civil Rights. Title VII of the Civil Rights Act of 1964  701, 2 U.S.C.A. 2000e.  Failure to accommodate; failure to engage in an

interactive process and constructive suspension. Violation of Title 29,
Chapter 16, Section 501 of the Rehabilitation Act of 1973,  29 U.S.C.
791 and as adopted by the EEOC Subpart G, 43 Fed. Reg. 60900 (1978),
29 C.F.R.  1613-701-1613.709; 29 C.F.R. 1630.2 (o) (3), 1630.9 (a).

85. Plaintiff realleges paragraphs 20 though 83. Duty on employers under
Rehabilitation Act goes beyond mere nondiscrimination against
handicapped individuals to affirmative obligation to accommodate.  The
agency either failed to accommodate, failure to timely accommodate and
failed to engage in an interactive process.  As the Defendant failed to
accommodate Plaintiff after returning to work due to a work related
disability post-surgery, this was a constructive suspension.   In January
2011, Plaintiff was forced to return to work after harassment of verbal
calls to Plaintiff's orthopedic surgeon advising him to stop designating
the telework requirement.  Plaintiff was made to return to another
building (away from supervisor and other OFPA Directors) to walk in
snow and ice – slipping and sliding so much that Plaintiff continues to be
ill with knee and back problems.  Plaintiff was also required to carry
items beyond the doctor's restrictions due to all the meetings and times
required for Program Integrity meetings which were almost entirely
outside Plaintiff's building.

86. Employer is obligated under Rehabilitation Act not to interfere, either
through action or inaction, with handicapped employees' efforts to
pursue normal life. This in some instances may require employers to alter
existing policies or procedures.  This was not done for Plaintiff.
Actions/efforts were taken to ensure Plaintiff could not pursue a normal
life as referenced in Rehabilitation Act of 1973, section 501, 29 U.S.C
791.  As 29 U.S.C. 791 (b ) states from the EEOC Regulations on

Federal Employment, Subpart G, Prohibition Against Discrimination on the Basis of Physical or Mental Handicap, which implements 501 of the Act, which sets for the general policy: "the Federal Government shall become a model employer of handicapped individuals. An agency shall not discriminate against a qualified physically or mentally handicapped person". Title VII prohibits federal agencies from discriminating in employment on the basis of (race and national origin) and from retaliating against employees for the assertions of their rights under Title VII. However, Plaintiff was also subject to discrimination and retaliation as exhibited in the treatment for reasonable accommodations.

### Claim 2

87. Violation of Civil Rights.   Title VII and 29 CFR 1630.12.  Plaintiff realleges paragraphs 20-83.  Retaliation and coercion as a result of complaining about discrimination by reason of race, gender, handicap, disability, and illness.  For part of 2011, Plaintiff was the only female Deputy Director.  Plaintiff was the eldest of all Deputy Directors.  The balance of the OFPA Deputy Directors was 2 white males, non-disabled and one Asian American (non-disabled).  Previously there was one white female, non-disabled Esmeralda Pereira who was reassigned to another position/department.  She was replaced by a male. Plaintiff states that she was discriminated on all noted levels including testifying for another employee who was also trying to enforce his Title VII of the Civil Rights Act rights.  As a result, Plaintiff asserts that she further became a victim of retaliation.

88. Failure to timely and/or in some cases not at all accommodate to Plaintiff which was required to enable Plaintiff to perform essential job functions. This was not done although Plaintiff provided sufficient

evidence to make at least facial showing of reasonable accommodations possible to meet their burden under Rehabilitation Act to prove Plaintiff was a qualified handicapped individual.  Rehabilitation Act of 1973, section 501, 29 U.S.C. 791.

89. As 29 U.S.C. 791 (b ) states from the EEOC Regulations on Federal Employment, Subpart G, Prohibition Against Discrimination on the Basis of Physical or Mental Handicap, which implements 501 of the Act, which sets for the general policy:  "the Federal Government shall become a model employer of handicapped individuals.  An agency shall not discriminate against a qualified physically or mentally handicapped person".  Title VII prohibits federal agencies from discriminating in employment on the basis of (race and national origin) and from retaliating against employees for the assertions of their rights under Title VII.  However, Plaintiff was subject to discrimination and retaliation as exhibited in the treatment for reasonable accommodations and then to work assignments, conditions and location.

90. Due to allegations of discrimination, Plaintiff's office was involuntarily moved and isolated from all other OFPA managers.  The building, facilities and office were not conducive to Plaintiff performing her job.  This made performing job duties more difficult.  When Plaintiff asked in 2010 if her current (established in 2009) office could be maintained, Mr. Petillo stated "it was not in the best interest of OFPA."  This was executed when Plaintiff was out having knee surgery.  Therefore Plaintiff's best interest was not a priority.   Plaintiff was subject to the dangerous situation having to ambulate with a cane in snow, wet, ice with slipping and sliding.  This was particularly egregious to subject someone who continued to use a cane to ambulate and was recently post

bilateral knee surgery. Medical records showed that Plaintiff continued
to have knee problems/complaints. This was ignored. This was further
complicated with walkways being closed and/or modified due to
construction at the Switzer building. In addition, the only support staff
person was in the HHS building. Therefore many administrative duties,
Plaintiff had to take care of herself and/or goes the Humphrey building.
Plaintiff could not drive and had to take public transportation.
Commuters would not always get up for the disabled prompting more
injury to the back and knees. Plaintiff wrote to ask for help from DOL
given these were work related disabilities, but DOL did not respond.
Matter of fact, DOL acted as if they had no record of a right knee
approval for Plaintiff although they had recently approved right knee
surgery for Plaintiff. This was simultaneous to the agency not submitting
Plaintiff's CA1 report of traumatic injury January of 2011. Plaintiff also
reported the injury to DOL and they did nothing and did not include the
right knee as an accepted condition. The right knee was not included
until a couple of years later when Plaintiff went to the Secretary of DOL
and again enlisted her Congressman for support. Plaintiff was subject to
numerous other materially adverse actions such as being mandated to
continue to serve as Deputy Director of Management Assurance although
Plaintiff objected (due to lack of reasonable accommodations and lack of
resources, funding, proper level of contract staff and ability to fill
vacancies). Plaintiff was not immediately offered Supervisory training
(not provided until 2011); not provided a position description for the
Deputy Director position; not provided like training to that as extended
to other OFPA Deputy Directors; Plaintiff was spoken to in harsh tones
in public settings; Plaintiff was minimized with contractors with contrary

direction; subordinates were able to ignore and disrespect Plaintiff without repercussions which caused a very hostile environment; Plaintiff was not provided the same performance ratings and rewards as other OFPA Deputy Directors; contractors who reported on Plaintiff's contract were not co-located with Plaintiff, but right across the hall from Mr. Petillo.   Federal and agency regulations for reasonable accommodations were not followed.  Telework regulations were not followed.  Plaintiff was advised that she first had to apply for telework under reasonable accommodations rather than telework offered under work/life balance offering that numerous ASPR employees were enjoying.  Plaintiff was advised that based on the response from the telework reasonable accommodation response, Plaintiff would then be considered for the work/life balance telework offering.   Reasonable accommodations would not be provided to Plaintiff but was extended to Mr. Sparry, white male non-disabled at that time,  although he did not have a disability and the FOH doctor did not authorize a reassignment reasonable accommodation for him. Mr. Dolinsky, white male, non-disabled was given a geographical reassignment to Chicago, IL although all of his staff resided in Washington, DC.  This change was not due to a disability.  Yet when Plaintiff requested to telework from Los Angeles, CA while seeking medical care and assistance from family in the same city, Plaintiff was denied and forced to return to DC and not given any telework days.   CAPTEC performed an ergonomic review and recommended telework and this benefit continued to be denied to Plaintiff.  Plaintiff  could not even maintain her dignity to have a "lift" on the toilet installed to assist her immediately following bilateral knee surgery.  This caused more injury to Plaintiff's knees and back to get up

and down.  Plaintiff was not given a larger office which would have supported sit to stand equipment which was authorized and noted by CAPTEC was required for Plaintiff.  Although an office was large enough and available, Plaintiff was denied based on an employee "coming in the future".  Plaintiff was not given a reasonable accommodation for AWS and therefore had her job advertised and then not selected.  Plaintiff's references were not even contacted for feedback.  Although Plaintiff had (against her wishes) served in the capacity as Acting Deputy Director for two whole years, Plaintiff was not permanently selected.  The job had never been advertised for almost two entire years from when Plaintiff was requested to serve in a temporary capacity while the permanent replacement in the position of Deputy Director was advertised.  This was intentional.  When Esmeralda Pereira was reassigned another position, her job was advertised multiple times until a replacement was found- and it did not take 2 whole years.  But the same was not executed for the Plaintiff.  Plus Plaintiff was never allowed to staff at the same capacity as her predecessor, Brian Sparry and/or back fill vacancies as other OFPA Deputy Directors.  Plaintiff was not allowed to have the same level of contract support as Mr. Sparry.  At the time Appellant was asked to serve as Acting Deputy Director, Appellant had not been advised that two of the last three staff members had already been in discussions to transfer/detail and/or be reassigned to other departments.  Although additional duties such as Program Integrity was added to Plaintiff's responsibilities, Plaintiff was not allowed to add staff as the "detailed employees were tying up her FTE" (basically the slot to which a vacancy could be advertised).  This was not the same treatment when  other OFPA Deputy Directors had vacancies and/or staff

reassigned.  Those managers were able to immediately advertise and secure replacements.  This was to publicly humiliate Plaintiff. Contractors and Diana Woodfolk were told before Plaintiff that she was being removed from her job (due to non-selection) because she needed to work on her leadership skills.  These are the same contractors Plaintiff reported to the Contract Officer as they were not fulfilling their contract- but this contract poor performers knew of Plaintiff's future before Plaintiff.  Then Plaintiff was given a directed reassignment first in October 2011 as Records Liaison and then in January 2012 as Senior Management Analyst.  Plaintiff was stripped of the Team Leader duties as Plaintiff was told that she needed to work on her leadership skills. Plaintiff suffered the loss as a senior staff member with senior agency staff.  Plaintiff had diminished duties and loss of responsibilities as now she would only report directly to Mr. Petillo.  Plaintiff was immediately excluded from all meetings that she once attended for Program Integrity and other meetings which she started in Management Assurance. Even in the duties Plaintiff was supposed to have assumed in the directed reassignment, Plaintiff was excluded from the meetings.  When Plaintiff complained, Mr. Petillo's response was that it was Plaintiff's duty to get the information she required although Plaintiff spoke of the non-response and difficulty with the (finally) being given telework in Los Angeles and no other ability but to call/e-mail those from which she required responses.  This was then used to condemn Plaintiff's performance as unacceptable in 90 days of performance review and then a 90 day PIP period after which Plaintiff was removed from federal service.  During this time, Plaintiff was not allowed to travel to Washington, DC for meetings Plaintiff felt would be beneficial for her.  Therefore Plaintiff

was penalized for finally receiving the reasonable accommodation of telework.   There were no investigations for  the complaints Plaintiff made to responsible managers.  When Plaintiff finally had to file EEO complaints (in order to stay within the statutory timelines for filing) then the response from the Secretary's office was  there was nothing could be done as Plaintiff had filed an EEO complaint.  Plaintiff was not provided a reasonable accommodation of a reassignment from the directed reassignment position.  Plaintiff now has chronic pain and continues to have medical problems/injuries as a result of these working conditions and environment.   All of these adverse employment actions would definitely have dissuaded any reasonable worker from making or supporting a charge of discrimination.

## Claim 3

91. Violation of Civil Rights. The Agency failed to follow Executive Order No. 13163 dated July 26, 2000, 65 F.R. 46563 signed by President Clinton.   Plaintiff realleges paragraphs 20 through 83.  This was an Executive Order to increase the opportunities for individuals with disabilities with the federal government.   The mandate required that agencies were to increase their efforts to accommodate individuals with disabilities.  The aspects of this order were not extended to the Plaintiff. Requirements of the Rehabilitation Act were not executed.

## Claim 4

92. Violation of Civil Rights.

The agency failed to follow Executive Order No. 13164 dated July 26, 2000, 65 F. R. 46565 signed by President Clinton.  Plaintiff realleges paragraphs 20 through 83.  Plaintiff as a federal employee with a disability did not enjoy benefits and privileges of employment equal to

those enjoyed by employees without disabilities as required by this Executive Order.  There was no explanation of how the reasonable accommodation process was to flow.  There was no identification of who would make the final reasonable accommodation decisions.  The responsibilities of the Plaintiff were not clearly articulated.  The process was not interactive.  It was not provided that reassignment was considered as a reasonable accommodation.  There were no appeal rights stated on the denial letter of reasonable accommodations as required in the agency reasonable accommodation regulations.  There was no informal dispute resolution process to allow Plaintiff to obtain prompt reconsideration of denials of reasonable accommodations.  Neither denial letters or Mr. Petillo advised Plaintiff that she had the right to file EEO complaint and other statutory processes, as appropriate when her reasonable accommodation requests  were denied.  The Executive Order was not followed for Plaintiff.

## Claim 5

93. Violation of Civil Rights. Hostile Working environment. Violation of Title 7 of the Civil Rights Act and EEOC regulations 29 CFR, Part 1614, 102(a)(3).  Plaintiff realleges  paragraphs 20-83.  The work environment was very hostile.  Plaintiff experienced workplace harassment and feared going to work because of the offensive, intimidating, and oppressive atmosphere generated by the Defendants.  Management acted in such a manner designed to make Plaintiff quit in retaliation in exercising per protected rights.  The workplace was permeated with discrimination, intimidation ridicule and insult which was sufficiently severe or pervasive to alter the condition of the Plaintiff's employment and create an abusive working environment. Defendants caused and/or permitted

violation of Plaintiff's rights under Title 7 and other laws as designated in the claims of this complaint.  No remedy was provided to Plaintiff although she complained to all Defendants (except current Secretary) but Plaintiff did complain to her predecessor,  Secretary Sebellius on multiple occasions.   Plaintiff also complained to Mr. Petillo about him raising his voice and speaking down to her.  The Defendants did nothing to promptly correct the harassing behavior when Plaintiff reported Mr. Petillo's conduct.  The only action which happened is that Plaintiff was advised that she could file an EEO complaint.  With the October, 2011 directed reassignment, the Defendants simply took the time Plaintiff was speaking to Ms. Price-Detherage to correct all of their deficiencies (illegal aspects) with the directed reassignment (as cited in Plaintiff 's immediately filed  EEO complaint).  Plaintiff was not allowed to maintain the initial directed reassigned position but got another directed reassignment in January 2012.  Plaintiff did not want this position and continued to be denied to work in her job specialty.

## Claim 6

94. Violation of Civil Rights.  Violation of Executive Order 13548 dated July 26, 2010, 75 F.R. 45039 by President Obama.  Plaintiff realleges paragraph 20-83.  This Executive Order states that each agency shall designate a senior level official to be accountable for enhancing employment opportunities for individuals with disabilities and individuals with targeted disabilities within the agency, consistent with law, and meeting the goals of the order.  This person is also charged with coordinating employment counseling to help match the career aspirations of individuals with disabilities to the needs of the agency.  This was never offered and/or implemented for the Plaintiff.  The agency was also

directed to increase agencies' retention and return to work of individuals
with disabilities. The agency was responsible to develop strategies to
retain federal employees with disabilities including, but not limited to
training, the use of centralized funds to provide reasonable
accommodations, increasing access to appropriate accessible
technologies and ensuring the accessibility of physical and virtual
workspaces. This was not provided to Plaintiff when she wanted to work
virtually from Los Angeles, CA where her doctors resided and she had
family members who could assist in her recovery and home functions.
The agencies were also mandated to make special efforts, to the extent
permitted by law, to ensure the retention of those who are injured on the
job. Agencies were told to improve, expand and increase successful
return to work outcomes for those who sustain work related injuries and
illnesses, as defined under the Federal Employees Compensation Act
(FECA), by increasing the availability of job accommodations and light
or limited duty jobs, removing disincentives for FECA claimants to
return to work , and taking other appropriate measures. None of this was
performed for Plaintiff. Even with work related disabilities that resulted
in surgery, Plaintiff was harassed to come back to work prior to when
Plaintiff's surgeon felt was appropriate. Accommodations were not
provided to Plaintiff upon return and no alternatives were implemented in
the interim. Additional injuries were incurred as work injuries were not
reported or reported multiple years later to the Department of Labor so
that Plaintiff could not receive additional FECA benefits. Defendants'
failure to provide accommodations exacerbated Plaintiff's conditions and
therefore caused additional injury. The President also tasked the
Secretary of Labor (head of DOL) in consultation with the Director of

Office of Personnel Management (OPM), shall pursue innovative re-employment strategies and develop policies, procedures, and structures that foster improved return to work outcomes, including pursuing overall reform of the FECA system. The Secretary of Labor was also to propose specific outcome measures and targets by which each agency's progress in carrying out return to work and FECA claims processing efforts could be assessed. Plaintiff reported to DOL that the Defendants were not providing reasonable accommodations and harassing her and physician for her to physically return to work and nothing was done. Plaintiff also reported subsequent injuries while employed by Defendant and nothing was done. In 2011, Plaintiff also contacted the Disability Manager, Kendrick Gibbs employed by the Defendant #1 and discussed the oppressive background which was non-responsive to timely addressing reasonable accommodation requests and nothing was done.

### Claim 7

95. Civil Rights Violation. Violation of Age Discrimination in Employment Act of 1967, Title 29 , Chapter 14, CFR 1625; 29 U. S.C. 621; Sections 12 and 15 of the ADEA of 1967 (29 USC 630,631, 633a) prohibiting discrimination on the basis of age. Plaintiff realleges paragraph 20 through 83. Plaintiff was discriminated based on age for selection in the position of Deputy Director of Management Assurance. Age was consistently brought up versus the injury which was the root cause of Plaintiff's disabilities. The need for AWS (alternate work schedule) which was directly related to Plaintiff's disabilities (as Plaintiff stated this day was used for medical treatment) was also inquired during the interview for the position as Deputy Director. Plaintiff's references were never contacted as part of the interview process. Non-disabled GS15s in

Mr. Petillo's organization were immediately reassigned as Deputy Directors and did not have to serve in an acting capacity and/or have the job advertised and made to interview for the positions. Plaintiff clearly stated that she had to maintain AWS which is why she requested it as a reasonable accommodation. The inability of Plaintiff to have AWS was cited as a basis as to why Plaintiff could not be provided the permanent position as Deputy Director. It was stated Plaintiff "needed to be on site", yet Mr. Dolinsky, white male, non-disabled Deputy Director whose original duty station was Washington, DC and reporting to Mr. Petillo was allowed to leave all of his staff in the Washington, DC office and reassigned to stay full time in Chicago, IL as his permanent duty station. Mr. Dolinsky was allowed to maintain his position and fly to meetings, trainings, etc. from Chicago to Washington, DC as necessary. This was not offered/provided to Plaintiff. The person chosen as the Deputy Director of Management Assurance was younger and an employee from another agency. The selected person was a younger male whose prior job was at a lower level (GS 14). Mr. Petillo stated this person was more qualified than Plaintiff who had served in the GS 15 position for two entire years in an acting capacity. This is discrimination based on the age discrimination prevented Plaintiff to be selected.

### Claim 8

96. Violation of Civil Rights. Violation of Occupational Safety and Health Administration 29 CFR part 1960, subpart I, Standard numbers 1960.72 (a-c), 1960.30 (a-e), 1960.29 (a-d), 1960.9, 1960.68, 1960.73 (a-c), 1960.55 (a-b), 1960.69, 1960.10 (a-d), 1960.28 a-(e)(2), 1904.4 (a-(b)(2), 1904.5 (a)-(b)(7). Plaintiff realleges paragraphs 20 through 83. Defendants as head of a federal agency were responsible to provide a

workplace free of recognized health and safety hazards. However, this is not what was provided to Plaintiff. Defendant Petillo intentionally removed Plaintiff from an office in which she had fought in excess of a year to have ergonomic equipment placed and configured in an office to address her disabilities. Plaintiff was consistently made to work in unsafe and unhealthful working conditions. Defendants were responsible to ensure prompt abatement of unsafe and unhealthful conditions. The Defendants were also responsible to keep records of accidents, injuries, illnesses and there causes, and post annual summaries for the required period of time as per 29 CFR Part 1960.66-74. Yet Plaintiff's injuries were either not reported or the agency would adjudicate DOL claims for which they had no authority. One CA1 was over 2 years in reaching DOL. For the 2009 injury, Mr. Petillo stated there was no record to provide Plaintiff although she provided a CA1 of the injury. Via e-mail, Mr. Sparry immediately reported the injury to Mr. Petillo and added he felt the Plaintiff was just reporting the injury "to get some money". The Defendant was also responsible to acquire, maintain, and require the use of approved personal protective equipment. However, Plaintiff was not promptly provided such equipment. Nor was the required annual inspections performed of the workplace with employee representatives present although Plaintiff made numerous complaints. Regulations also require Defendant to establish procedures to assure Plaintiff was not subject to restraint, interference, coercion, discrimination, or reprisal for exercising her rights under the agency's safety and health program. Plaintiff continuously suffered reprisal and to such a degree that it was detrimental to her physical and mental health. Regulations also required training of all supervisors.

### Claim 9

97. Violation of Civil Rights.  Violation of the Occupational Safety and Health (OSH) Act of 1970, 29 U.S.C. 651, 652, 653, 657, 660 and 3 U.S.C.  425 and Public Law 113-142 and 29 CFR Part 1977 which addresses discrimination against employees exercising rights under the William-Steiger Occupational Safety and  Health Act of 1970. Defendant is in violation of the OSH Act and the William-Steiger Occupational Safety and Health Act of 1970.   Plaintiff realleges paragraphs 20 through 83. Defendants failed to provide the Plaintiff with working conditions that were free from known dangers and received further discrimination and retaliation upon reporting of hazardous conditions and failure to accommodate to allow Plaintiff to work without further injury. Plaintiff continues to be ill due to unsafe conditions and failure to accommodate.

### Claim 10

98. Violation of Civil Rights.  Defendants failed to follow regulations for Freedom of Information Act as expressed in CFR Title 34, Subtitle A, part 5, Subpart C, Section 5.21 and 5 U.S.C. 552 (a) and 20 U.S.C. 3474 which define procedures in processing FOIA requests.  Plaintiff realleges paragraphs 20 through 83.  In 2011-2014, Defendant failed to abide by the stated legal statutes as Defendant was blocking Plaintiff's efforts to prove her cases of discrimination by not fulfilling Plaintiff's FOIA requests and not submitting documents in discovery of  EEO requests. This was done to interfere with Plaintiff having an unrestricted basis to information to prove violations of the cited laws and regulations.

### Claim 11

99. Violation of Civil Rights.  Violation of the Equal Pay Act (EPA), Title

29, Subtitle B, Chapter XIV, Part 1620 and Violation of the Fair Labor Standards Act, sections 15(a), 16 (a) and section 17 and 29USC 206(d). Plaintiff realleges paragraphs 20 through 83. EPA prohibits sex discrimination by Defendant on the basis of sex in the wages paid for "equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions." The word "requires" does not connote that an employer must formally assign the equal work to the employee; the EPA applies if the employer knowingly allows the employee to perform the equal work. This is what happened to Plaintiff. The equal work standard does not require that compared jobs be identical, only that they be substantially equal. Plaintiff was the only female in the OFPA (at first there was one other female who was given another job) and the only African American. The other female was not required to apply, interview and/or first serve in acting capacity for her job as Deputy Director. Plaintiff had equal skills in performance and had to extend greater effort in performance. Plaintiff had job factors which caused more mental fatigue and stress to meet the level of achievement for the job. Plaintiff was required (by job title and performance measurements) to complete the duties of a supervisor and manager as Deputy Director (only in an "acting" capacity) for two years although her job title and duties was to be that as Senior Management Analyst, Team Leader which was a non-managerial and non-supervisory position. These were the same duties as required of the other OFPA male Deputy Directors. However Plaintiff was not allowed to have the same staffing levels and not allowed to backfill vacancies as her male counterparts. As a result, Plaintiff had to assume those duties which required missing breaks, lunches and working overtime without

pay.  Plaintiff was not allowed the same contract staffing levels as those extended to Mr. Sparry but was required to complete even additional element requirements.  Although Mr. Sparry was given a reassignment due to reported stress on the job, the same was not extended to Plaintiff although she requested reassignment first and submitted subsequent request.  Only a punitive directed reassignment was later levied in October 2011 because Plaintiff executed her protected rights but was categorized as "dissatisfaction".  Plus insufficient resources were provided to Plaintiff while serving in a leadership capacity and then such reasons were used to state  Plaintiff lacked leadership skills.  Such an evaluation was the result of a position/duties Plaintiff was not supposed to perform.  None of the OPM rules were followed in the assignment.  No position description was ever supplied to Plaintiff.  The replacement in the permanent selection was a male.  The male was provided a QSI (quality step increase) for his first evaluation (although not for a full year period) although he came to a completed developed organization as provided by Plaintiff during the previous three years. Plus, Plaintiff was not even eligible to receive the full year monetary performance amount and had been threatened to have the evaluation "downgraded" for that reason.  As a result, Plaintiff did not receive the monetary performance award.  Yet the male was provided a QSI for a less than a year of a performance period.   Plaintiff was not selected for the permanent position as it went to someone more "qualified" although the male was a GS14 from another agency and Plaintiff was a GS15 who had performed the job for two whole years as "acting".

100.   Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 200e  et seq., are satisfied, any violation of the Equal Pay Act is

also a violation of title VII.  Therefore the same regulations prevail as previously stated.  Also under 1620.33 provides for recovery of wages due to willful violations, under sections 16 and 17 of the FLSA (Fair Labor Standards Act) for recovery of unpaid wages: the commission may supervise payment of the back wages and may bring suit for back pay and an equal amount in liquidated damages.  The employee may bring suit for back pay and an additional sum up to the amount of the back pay, as liquidated damages, plus attorney's fees and court costs.

### Claim 12

101.   Violation of Civil Rights.  Violation of personnel rules and prohibited personnel practices.  5 U.S.C 3341, 3345-3349 and 3371-3376; 5 CFR Parts 317 and 352; and Federal Personnel Manual and Departmental Personnel Manuel Chapters 300 (Subchapter 8), 334 and 352; 5 U.S. Code 2302.  Title 42, Chapter 21, Subchapter VI 2000e-2.  Plaintiff realleges paragraphs 20-83.  By definition, a detail is the temporary assignment of an employee to perform duties outside the scope of his/her normal position or to perform services for an organization other than the one appointed.  However, Plaintiff was not assigned on a temporary basis and forced to stay in the position of Acting Deputy Director for two years and not allowed to leave.  The "contract" under which the position was taken was not honored.  Then experiences during the tenure as Acting Deputy Director were used to move Plaintiff to another directed reassignment outside Plaintiff's specialty to rapidly remove her from federal service.  The basis and conditions for reassignments were not followed.  Plaintiff received conflicting statements on job/position assignment and detail versus reassignment.  Plaintiff submits this is further evidence of the discrimination and retaliation which permeated

her tenure with Defendant.  No other OFPA was subjected to a directed

reassignment during this time.  As summarized, Plaintiff was subject to

numerous prohibited personnel practices.  Although Plaintiff reported

this behavior to numerous personnel (Defendants) who had authority to

act and provide corrective action/behavior, none was extended on behalf

of the Plaintiff.   Plaintiff also complained to Mr. Petillo about him

raising his voice and speaking down to her.

### Claim 13

102.   Violation of Civil Rights. Violation of 29CFR 1607.11; Title 42-

Chapter 21 Subchapter VI  2000e-2; Title 41, Subtitle B, chapter 60, part

60-3, Section 60-3.11; 41 CFR 60.3.11.  Title 42, chapter 21, Subchapter

VI 2000e-2; 42 USC 12112(b).  Plaintiff realleges paragraphs 20 through

83.  Plaintiff was subject to Disparate Treatment and Disparate Impact.

Regulations state disparate treatment occurs where members of a race,

sex, or ethnic group have been denied the same employment, promotion,

membership, or other employment opportunities as have been available

to other employees or applicants.  The information clearly shows

Plaintiff was not afforded the same opportunities and/or treatment as

other employees within OFPA during the period of discrimination. The

disparity in impact was also identified as Mr. Sparry who did not have a

disability at that time was continuously treated differently in his tenure in

the position and in his ability to garner a reassignment as a reasonable

accommodation.  Standards, criteria and methods of administration had

the effects of discrimination on the basis of disability and used selection

criteria for the Deputy Director position and ability to use such work/life

balance offerings; qualification standards, or other selection criteria that

screen out or tend to screen out an individual with a disability.  These

policies had a discriminatory impact on the Plaintiff who was in a protected class- and thereby was treated more harshly.

### Claim 14

103. Civil Right Violation. Violation of 20 CFR 726.7, 726.6, and 726 and 20 CFR part 10, Claims for compensation under the Federal Employee's Compensation Act, as amended and 5 USC 301, 8102a, 8103, 8145 and 8149; 5 U. S. Code 8103. Plaintiff realleges paragraphs 20 through 83. Defendants failed to submit Plaintiff's workers compensation information and chose to adjudicate the claim (by not submitting information in the required timeframes) rather than following regulation, laws and policies. 5 U.S. Code 8103 addresses medical services and initial medical and other benefits. This code states the United States shall furnish to an employee who is injured while in the performance if duty, the services, appliances, and supplies prescribed or recommended by a qualified physician which the Secretary of Labor considers likely to give a cure and  give relief, reduce the degree or the period of disability, or aid in lessening the amount of the monthly compensation. These services, appliances, and supplies shall be furnished- (1) whether or not disability has arisen; (2) notwithstanding that the employee has accepted or is entitled to receive benefits under subchapter III of Chapter 83 of this title or another retirement system for employees of the Government and (3)by or on the order of the United States medical officers and hospitals, or at the employees option, by or on the order of physicians and hospitals designated or approved by the Secretary. This code was not followed as the doctor's orders were not followed. The physician was told  by phone "if she can work at home, she can work at the office"  to force Plaintiff back to work. Contact with physician was supposed to be in writing and

not via phone.  This was done after the first attempt by the defendant to lie in a letter to Dr. Gleiberman that he stated Plaintiff could only telework in California.  The physician only noted "telework" in his physician reports.   There was no reference to location.   In addition,  the agency failed to supply and/or timely provide the ergonomic equipment and/or reasonable accommodations which would have likely cured, give relief, reduce the degree or the period of disability or aid in the lessening the amount of monthly compensation.  The doctor's restrictions were not adhered. To terminate the employee to reduce claims was not the appropriate action to take.  Department of Labor did not correct the behavior of the Defendants.  Therefore this was an unlawful termination.

## Claim 15

Violation of Civil Rights. Lack of telework when initially requested and/or different rules not of record extended to Plaintiff.  Plaintiff realleges paragraphs 20-83.  Public Law 106-346 , Public law 111-292 and Telework Enhancement Act.  Plaintiff was not allowed to enjoy telework as a work/life offering as enjoyed by other ASPR employees. Upon return to work in 2011, Plaintiff was advised that she first had to go through a long laborious reasonable accommodations process through an FOH doctor.  No telework was allocated in the interim.  In addition, Plaintiff had been on telework as it had been recommended by orthopedic surgeon until he was badgered by phone calls and a letter, This is not how the balance of ASPR employees- disabled or not were treated.  Public Law 106-346 requires that all Executive agencies establish telework policies.  Public law  111-292 required "the head of each executive agency to establish and implement a policy under which employees shall be authorized to telework and for other purposes.  The

Telework Enforcement Act further emphasized this. This program also called for telework as a reasonable accommodation. The CAPTEC organization from the Pentagon performed an ergonomic evaluation for Plaintiff and stated telework should be provided. The Defendants did not acknowledge or adopt this evaluation. Plaintiff was not allowed under any programs to be provided telework when she returned to work in 2011.

### Request for Relief

104.    Reimbursement for any attorneys' fees for assistance in this case and associated fees and court costs.

105.    Front pay

106.    Restoration of all leave from date of removal

107.    Back pay

108.    Reinstatement to position and current grade of GS 15 level

109.    Restoration of all benefits from the date of removal. This includes amount the agency would pay for TSP benefits.

110.    Past and future Pecuniary Compensatory Damages

111.    Non-pecuniary Compensatory Damages

112.    Emotional Distress

113.    Difference of what DOL paid for compensation while off for multiple absences versus actual pay

114.    Posting of verdict at the office

115.    Punitive Damages

116.    Restoration of leave due to effects of mental torture

117.    Compensatory Damages

118.    Training for managers on reasonable accommodations laws and regulations

119.   Payment for all time off which DOL has not currently approved

120.   Liquidated damages

121.   Any further relief which the court may deem appropriate

### Exhibit 1

122.   Exhibit 1is the e-mail dated July 30, 2014 from EEOC Judge Kurt
Hodges with the "right to sue" notification.

### Demand for Jury Trial

123.   Plaintiff hereby requests a jury trial on all issues raised in this
complaint.

Dated: _____ 9-11-14 _____

Sign: _Wanda Savage_

Print Name: _Wanda Savage_

Exhibit 1

Complaint

You're seeing Basic Mail because you're using an unsupported Internet browser. Upgrade your browser or get the mobile app for the full Yahoo experience.
Don't show this again.

hodges               Search Mail   Search Web      Wanda   Profile      Go   Sign Out   Home

Inbox   Contacts   Notepad   Calendar

Compose                    Delete   Reply   Reply All   Forward   Actions      Apply   Back to Search Results

Inbox (65646)              buyerpricer.com/hodHodges University Ft | buyer        Sponsored
                           esuniversityft     pricer.com
Drafts (53)
                                              Searching for Hodges University Ft My
Sent

Spam (763)      [Empty]    Re: EEOC Case#570-2012-00315X and agency #HHS-O   Wednesday, July 30, 2014 6:57 AM
                           S-0024-2011
Trash           [Empty]
                           From: "KURT HODGES" <KURT.HODGES@EEOC.GOV>
My Folders      [Edit]
                           To: "Wanda Savage" <homeland90@yahoo.com>
Deleted Items (1)
                                                                       Full Headers Printable View
Drafts
                           Ms. Savage,
Outbox
                           Just a point of clarification.  In the federal sector process, we don't issue "right to sue letters."  Instead,
Sent Items                 you have the following options under the circumstances you described: 1) file a civil action in Federal
                           District Court which stops the administrative processing of your EEO complaint at the EEOC; 2) request
       a final agency decision (FAD) without an administrative hearing (which you can appeal to the EEOC,
Sponsored                  Office of Federal Operations (OFO); or withdraw the EEO complaint in its entirety.  Please confirm
                           receipt of this message.  Thank you.

Farmers Insurance
Wondering How You Could
Save on Auto Insurance?

                           Kurt C. Hodges
                           Administrative Judge
                           EEOC, Washington Field Office
                           131 M. Street, NW
                           Washington, DC  20507
                           Office: (202) 419-0710
                           Fax : (202) 419-0739
                           >>> Wanda Savage <homeland90@yahoo.com> 7/28/2014 6:27 PM >>>
                           Dear Judge Hodges,

                           As the agency has failed to respond to my inquiries and the fact that your order as
                           expressed in 2012 was not followed, I am requesting a "right to sue letter" so that I
                           can pursue my claims and get some resolutions.

                           I appreciate your prompt attention to this matter is appreciated.  My mailing address
                           is 4353 Enoro Drive, LA,CA  90008.  As it appears items are lost in the mail, can
                           this be e-mailed to me in addition to mailing and/or sent certified?

                           Thanks,
                           Wanda Savage

Compose                    Delete   Reply   Reply All   Forward   Actions      Apply   Back to Search Results

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☑ )

Wanda Savage

**(b)** County of Residence of First Listed Plaintiff  *Los Angeles*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are
representing yourself, provide the same information.

Wanda Savage    (323) 348-
4353 Enoro Drive        9634
LA, CA 90008

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

See attached

County of Residence of First Listed Defendant  Washington DC
*(IN U.S. PLAINTIFF CASES ONLY)*

Attorneys *(Firm Name, Address and Telephone Number)* If you are
representing yourself, provide the same information.

Attorney General, federal government

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☑ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1. Original Proceeding

☐ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No    (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☑ No    ☑ **MONEY DEMANDED IN COMPLAINT:** $ *excess of $75,000*

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Title 7; Fair Labor Standards Act; Rehabilitation Act; Age Discrimination

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ-enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com-modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☑ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**    Case Number:  LACV14-7709

CV-71 (06/14)                    CIVIL COVER SHEET                    Page 1 of 3

1  Wanda Savage

2  4353 Enoro Drive

3  Los Angeles, CA   90008

4  (323) 348-9634

5  Plaintiff in Pro Per

6

7

8

9  # UNITED STATES DISTRICT COURT

10  ## CENTRAL DISTRICT OF CALIFORNIA

11

12  Wanda Savage,                    Case No.: Insert Case Number

13           Plaintiff,              **COMPLAINT**

14      vs.                          **Failure to Accommodate with**

15  Sylvia Burrell, Secretary, U. S. **Failure to engage in interactive**

16  Department of Health and Human   **process; Age, Race, Gender (female)**

17  Services; Jay Petillo; Nicole Lurie; **and Disability Discrimination; Non-**

18  George Korch; Edward Gabriel; Alyce **Selection; Directed Reassignments;**

19  Bridges; Benjamin Goldhaber; Denise **Disparity in Treatment, Disparity in**

20  Carter-Wells; Maria Price-Detherage; **Impact; Hostile Working**

21  Antonia Harris; Jacqueline Clay; Bonita **Environment; Telework**

22  White; Rob Edwards; Christine Smith **Harassment; Retaliation; Failure to**

23  and Joyce Cooper ,               **Follow Department of Labor Laws;**

24           Defendants.             **Constructive Suspension; Failure to**

25                                   **to follow FOIA regulations; and**

26                                   **Prohibited Personnel Practices.**

27

28                                   **DEMAND FOR JURY TRIAL**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes   ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☐ Yes   ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | | ☒ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| ☒ Yes   ☐ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | | ☒ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | **A.**<br>Orange County | **B.**<br>Riverside or San Bernardino County | **C.**<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| ☐ Yes   ☒ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. ➡ | ☐ Yes   ☒ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E, below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ⬇ |

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | *Western Division* |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?  ☐ NO  ☒ YES

If yes, list case number(s): *LACV14 -7111*

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** *Wanda Savage*   DATE: *October 3, 2014*

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |