**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **WANDA SAVAGE**, |
| Plaintiff, |
| v. |
| **SYLVIA MATHEWS BURWELL**, **Secretary, U.S. Department of Health and Human Services**, |
| Defendant. |

Case No. 15-cv-00791 (CRC)

<u>**MEMORANDUM OPINION**</u>

Wanda Savage, a former management-level employee at the U.S. Department of Health and Human Services ("HHS"), brings this *pro se* employment discrimination action against the Department's current Secretary, Sylvia Mathews Burwell.  This Court received the action following an Order to transfer venue by the U.S. District Court for the Central District of California, where Savage currently resides and the case was originally filed.

In a 15-count, 47-page Complaint, Savage, who is African-American and over 40 years of age, recounts several years of alleged discriminatory conduct and improper personnel actions by her supervisor and other HHS officials.  Savage worked in the Office of Financial Planning and Analysis ("OFPA"), which performs financial planning and management for HHS's Office of the Assistant Secretary for Preparedness and Response in Washington, D.C.  According to her Complaint, Savage's tenure at HHS began in 2008 as a Senior Management Analyst in OFPA's predecessor office.  <u>See</u> Compl. ¶ 21.  The following year, she began serving as an Acting Deputy Director in OFPA when the prior occupant of that position was transferred.  <u>See</u> <u>id.</u> ¶ 29.  After Savage was passed over for a permanent Deputy Director position by her supervisor and then reassigned, she was removed from federal service effective May 2014, ostensibly for

performance deficiencies.  See id. ¶ 83; Pl.'s Opp'n Def.'s Mot. Dismiss 13–16; Def.'s Mot.

Dismiss 7–11.

While it is somewhat difficult to untangle Savage's sprawling Complaint, her claims

appear to rest on the following central allegations: (1) that she was not permitted to work

remotely from her home in Los Angeles, which she contends was necessary due to complications

from injuries she sustained in a 2007 car accident that required two surgeries, see Compl. ¶¶ 20,

37; (2) that HHS failed to provide her other reasonable accommodations, such as an oversized

computer monitor and ergonomic office equipment, for a variety of physical disabilities arising

from her injuries, id. ¶¶ 46–47; (3) that she was not permitted to continue an alternative work

schedule if she wanted to assume the Deputy Director position on a permanent basis, id. ¶ 51;

(4) that she was denied a permanent Deputy Director position, reassigned to a different position,

and relocated to another building due to her age, gender, race, and disability, and in retaliation

for having filed administrative claims with the Equal Employment Opportunity Commission

("EEOC"), id. ¶¶ 89–90, 95; (5) that she received lower performance ratings and associated pay

than her white, male, and non-disabled counterparts, id. ¶¶ 99–100; and (6) that she was

subjected to a hostile work environment by virtue of the personnel actions noted above and a

laundry list of other perceived instances of mistreatment, id. ¶¶ 90, 93.

Savage brings her claims under the usual anti-discrimination statutes: the Rehabilitation

Act of 1973, which prohibits discrimination based on disability in federal employment; Title VII

of the Civil Rights Act of 1964, which prohibits race and gender discrimination and retaliation in

employment; and the Age Discrimination in Employment Act of 1967, which forbids

employment discrimination based on age.  She also includes claims under the Occupational

Safety and Health Act of 1970; the Freedom of Information Act; the Federal Employees'

Compensation Act; the Telework Enhancement Act of 2010; and various other federal regulations and executive orders concerning equal employment opportunity and workplace safety.  HHS has moved to dismiss these ancillary claims under Federal Rule of Civil Procedure 12(b)(1) on the ground that the applicable statutes, regulations and executive orders do not create private rights of action and, as a result, the Court lacks subject matter jurisdiction.  The agency also moves to dismiss Savage's hostile work environment claim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  And, despite the fact that no discovery has taken place, it moves for summary judgment on Savage's claims of discrimination based on her nonselection for the Deputy Director position, her allegedly unequal pay, and her reassignments. For the following reasons, the Court will grant the Department's motion to dismiss and grant in part and deny in part its motion for summary judgment.[1]

## I.      Legal Standards

Because "[f]ederal courts are courts of limited jurisdiction," it is "presumed that a cause lies outside of this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Gammill v. U.S. Dep't of Educ., 989 F. Supp. 2d 118, 120 (D.D.C. 2013) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)) (internal

---

[1] HHS contends that Savage failed to exhaust administrative remedies with respect to some of her claims.  Where an employment discrimination plaintiff fails to demonstrate that she exhausted administrative remedies prior to filing the complaint and provides no basis for equitable tolling, the defendant is entitled to summary judgment.  See Greer v. Paulson, 505 F.3d 1306, 1316–17 (D.C. Cir. 2007).  But while Savage has not pled that she exhausted administrative remedies prior to filing her Complaint, both parties refer to prior complaints with the agency and with EEOC, and Savage attaches an email with an EEOC representative as Exhibit 1 to her Complaint.  Because courts are required to construe *pro se* complaints liberally, holding them to "less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation mark omitted), the Court will defer questions of exhaustion until summary judgment briefing post-discovery.

quotation marks omitted).  Thus, on a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), "the plaintiff bears the burden of establishing" that the court has jurisdiction.  Id. (quoting Adams v. U.S. Capitol Police Bd., 564 F. Supp. 2d 37, 39–40 (D.D.C. 2008)) (internal quotation mark omitted).  Although the court must "accept all of the factual allegations in the complaint as true," id. at 120–21 (quoting Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005)) (internal quotation marks omitted), it "must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim" because "subject matter jurisdiction focuses on the court's power to hear the claim," id. at 121 (quoting Bailey v. WMATA, 696 F. Supp. 2d 68, 71 (D.D.C. 2010)) (internal quotation marks omitted).

However, at the same time, in reviewing a motion to dismiss a *pro se* plaintiff's complaint, a judge must construe the complaint liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (citations omitted) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976))).  In other words, courts must "afford all possible inferences favorable" to *pro se* pleaders "on allegations of fact."  Zaidi v. U.S. Sentencing Comm'n, 115 F. Supp. 3d 80, 83 (D.D.C. 2015).  But "even a pro se plaintiff . . . bears the burden of establishing that the [c]ourt has subject matter jurisdiction."  Id. (alteration in original) (quoting Rodriguez v. U.S. Citizenship & Immigration Serv., 605 F. Supp. 2d 142, 145 (D.D.C. 2009)).  Finally, if "a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety."  Id. (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)).

On a Rule 12(b)(6) motion for failure to state a claim, a court must assess whether the complaint alleges sufficient facts that, accepted as true, state an entitlement to relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  A complaint's factual allegations must be construed "in the light most favorable to the plaintiff." Hammel v. Marsh USA Inc., 79 F. Supp. 3d 234, 238 (D.D.C. 2015). Yet "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Harris v. Dist. of Columbia Water & Sewer Auth., 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted).  A complaint that presents merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine only if a reasonable fact-finder could find for the nonmoving party; a fact is material only if it is capable of affecting the outcome of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Laningham v. U.S. Dep't of Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion for summary judgment, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the . . . motion'"—in this case, Savage. Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369

U.S. 654, 655 (1962) (per curiam)).  Typically, however, "summary judgment . . . 'is proper only after the plaintiff has been given adequate time for discovery.'"  Americable Int'l, Inc. v. Dep't of Navy, 129 F.3d 1271, 1274 (D.C. Cir. 1997) (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C. Cir. 1988)).

## II.     Analysis

### A.     Motion to Dismiss

#### 1.     Claims Based on Executive Orders

In Counts Three, Four, and Six of the Complaint, Savage alleges that HHS is liable for having failed to follow Executive Order Nos. 13163, 13164, and 13548, respectively.  These Orders generally require federal agencies to expand efforts to recruit and accommodate individuals with disabilities.  But they do not provide for private rights of action against the federal government.  Federal courts lack jurisdiction over suits against the government where it has not waived its sovereign immunity.  See FDIC v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.  Sovereign immunity is jurisdictional in nature." (citations omitted)).  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied."  Lane v. Pena, 518 U.S. 187, 192 (1996) (citations omitted).  The Executive Orders cited by Savage not only fail to expressly authorize private actions against the government to enforce them, they expressly state that they are *not* intended to create privately enforceable rights.  See Exec. Order No. 13163 § 4, 3 C.F.R. 13163 (2000) ("This order is intended only to improve internal management of the executive branch and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies, its officers, its employees, or any person."); Exec. Order No. 13164

§ 5(b), 3 C.F.R. 13164 (2000) (same); Exec. Order. No. 13548 § 5(c), 75 Fed. Reg. 45039 (2010) ("This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."). Accordingly, the Court will grant Defendant's motion to dismiss these counts of the Complaint for lack of jurisdiction.

2.      OSHA Claims

Counts Eight and Nine of the Complaint allege that HHS failed to provide Savage with a "workplace free of recognized health and safety standards." Compl. ¶ 96.  Specifically, Savage maintains that HHS violated the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651 et seq. ("OSHA"), by not providing her ergonomic office equipment and an office-furniture arrangement that would accommodate her disabilities, and by not "keep[ing] records of accidents, injuries, illnesses and [their] causes, [as well as] annual summaries."  Id.  However, it is "well established that 'OSHA violations do not themselves constitute a private cause of action for breach.'"  Am. Fed'n of Gov't Emps., AFL-CIO v. Rumsfeld, 321 F.3d 139, 143 (D.C. Cir. 2003) (quoting Crane v. Conoco, Inc., 41 F.3d 547, 553 (9th Cir. 1994)).  The Court will thus dismiss these counts of the Complaint as well.

3.      Federal Employees' Compensation Act Claim

In Count Fourteen of her Complaint, Savage alleges that HHS violated the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101 et seq. ("FECA"), and its applicable regulations by failing to submit her workers' compensation claim to the Department of Labor; failing to provide the services and support she required following her injury, such as allowing her to telework; and ultimately terminating her employment. See Compl. ¶ 103.  But "FECA does

7

not provide a cause of action against a government employer who fails to comply with [its] regulations." Schmidt v. Shah, 696 F. Supp. 2d 44, 65 (D.D.C. 2010). The statute expressly states that the "Secretary of Labor shall administer, and decide all questions arising under," FECA, 5 U.S.C. § 8145, and that "action of the Secretary or his designee . . . is (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise," id. § 8128(b). As a result, the Court will dismiss this claim for lack of subject matter jurisdiction. See id. at 66.

### 4.     Telework Enhancement Act Claim

Count Fifteen of the Complaint alleges that HHS violated the Telework Enhancement Act, 5 U.S.C. §§ 6501 et seq. ("TEA"), by denying her request for telework after her physician recommended it. See Compl. ¶ 103. The TEA requires only that "the head of each executive agency . . . establish a policy under which eligible employees . . . may be authorized to telework," "determine eligibility for all employees of the agency to participate in telework," and "notify all employees of the agency of their eligibility to telework." 5 U.S.C. § 6502(a)(1). The Act does not guarantee any right to telework. Nor does it suggest any private right of action to enforce its terms. The Court therefore lacks subject matter jurisdiction over Savage's claim under the Act. See FDIC, 510 U.S. at 475; Lane, 518 U.S. at 192.

### 5.     FOIA Claim

In Count Ten, Savage alleges that HHS violated the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), "by not fulfilling [her] FOIA requests and not submitting documents in discovery of EEO requests." Compl. ¶ 98. Nowhere, however, does Savage plead or allege facts demonstrating that she actually filed a proper FOIA request with the agency. Rather, she appears

to be attempting to assert a FOIA-based cause of action in place of civil discovery, which the statute does not allow.  See Baldrige v. Shapiro, 455 U.S. 345, 360 n.14 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery."); Brown v. EPA, 384 F. Supp. 2d 271, 280 (D.D.C. 2005) (noting that plaintiff sought documents through FOIA "not because she believe[d] it w[ould] contribute to an understanding of [a governmental process], but because she fe[lt] wronged, and want[ed] to know who [was] responsible," and explaining that the "impulse [was] understandable" but that "FOIA is not an avenue for obtaining documents for personal use, or a substitute for civil discovery").  Accordingly, the Court will dismiss this count pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

### 6. Hostile Work Environment Claim

Savage alleges in portions of Count Two and in Count Five that HHS subjected her to a hostile work environment.  The standard for a hostile work environment claim requires that "a plaintiff . . . show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Baloch v. Kempthorne, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  A plaintiff must also demonstrate "some linkage between the hostile behavior and the plaintiff's membership in a protected class."  Na'im v. Clinton, 626 F. Supp. 26 63, 73 (D.D.C. 2009).  Courts look to the "totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  Id. (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)).  Courts also consider whether the alleged harasser was a supervisor or co-worker of the plaintiff,

applying a vicarious-liability standard in which the burden shifts to the employer to the former circumstance and a negligence standard to the latter circumstance.  See Curry v. Dist. of Columbia, 195 F.3d 654, 659–60 (D.C. Cir. 1999).

As support for her hostile work environment claim, Savage maintains that her supervisor "rais[ed] his voice and [spoke] down to her"; that either her supervisor or others (the Complaint does not specify) spoke to her in "harsh tones in public settings"; that her subordinates ignored and disrespected her without repercussion; that HHS failed to take meaningful corrective action after she complained of that treatment; that she was twice reassigned involuntarily; and that she was ultimately terminated.[2]  Compl. ¶ 90, 93; Pl.'s Opp'n 15–16, 23.  She also claims that her office was moved to a satellite building, making it difficult to walk to meetings due to her injuries, and that boxes were stored in her office, limiting her ability to move around.  See id. ¶¶ 46–47, 90.

This count fails to state a claim for two reasons.  First, Savage has not pled facts linking these actions to her membership in a protected class.  "[H]ostile behavior, no matter how unjustified or egregious, cannot support a claim of [discriminatory] hostile work environment" where there is no evidence of "linkage between the hostile behavior and the plaintiff's membership in a protected class."  Na'im, 626 F. Supp. 2d at 73 (citing, e.g., Baloch, 550 F.3d at 1201; Nurriddin v. Goldin, 382 F. Supp. 2d 79, 108 (D.D.C. 2005)).

Second, she has not alleged facts showing that the purported conduct was sufficiently severe or pervasive to make out a claim of an abusive working environment.  The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general

---

[2] Savage clarifies in her Opposition that her termination "is not part of this lawsuit."  Pl.'s Opp'n 16.  She points to it only as signaling "the intent and motivation behind the [other] actions," id., and demonstrating "the extent of the hostility," id. at 23.

civility code.'"  Faragher, 524 U.S. at 788 (quoting Oncale v. Sundowner Offshore Servs., Inc.,

523 U.S. 75, 80 (1998)).  "Properly applied, they will filter out complaints attacking the ordinary

tribulations of the workplace, such as the sporadic use of abusive language . . . ."  Id. (quoting

Barbara Lindemann & David Kadue, Sexual Harrassment in Employment Law 175 (1992))

(internal quotation mark omitted).  Even if raising one's voice and "speaking down" to a

subordinate, or using "harsh tones in public settings" amounted to abusive language, Savage has

not alleged that these incidents occurred any more than intermittently.  Nor has she alleged, for

that matter, that these incidents were severe enough to clear the bar set by the D.C. Circuit:

"[I]solated incidents (*unless extremely serious*) will not amount to discriminatory changes in the

'terms and conditions of employment.'"  Brooks v. Grundmann, 748 F.3d 1273, 1277 (D.C. Cir.

2014) (quoting Faragher, 524 U.S. at 788) (internal quotation marks omitted) (finding

insufficiently severe a supervisor's "yell[ing]" at the plaintiff and "violently" throwing a thick

book on the table at a meeting).  Intermittent rudeness is not sufficiently severe or pervasive to

support a claim for hostile work environment.

Nor are the other work-related incidents to which Savage points—such as role

reassignments, office relocation, and the storage of boxes in her office—sufficiently severe or

pervasive to state a hostile work environment claim.  See, e.g., Swann v. Office of Architect of

Capitol, 73 F. Supp. 3d 20, 32 (D.D.C. 2014) ("[E]mployment-related actions"—such as denial

of overtime during certain periods, termination of a grace period for late arrival, "exclusion from

the informal chain of command, close monitoring of . . . work, [and] missed opportunities"—"do

not constitute an abusive working environment." (quoting Bell v. Gonzales, 398 F. Supp. 2d 78,

92 (D.D.C. 2005)) (internal quotation marks omitted)).  While such events might prove

frustrating to an employee, they are akin to the "ordinary tribulations of the workplace" that

courts in this district routinely hold do not give rise to a hostile work environment claim.  Id.
(quoting Franklin v. Potter, 600 F. Supp. 2d 38, 76 (D.D.C. 2009)) (internal quotation marks
omitted) (collecting cases).

Savage's termination is arguably a different story.  Typically presented as evidence of
discrimination or retaliation rather than hostile work environment, and considered a materially
adverse action in those contexts, termination would almost certainly constitute a "severe"
employment action.  See Barton v. Zimmer, Inc., 662 F.3d 448, 453–54 (7th Cir. 2011) (noting
that "termination" constitutes an "[a]dverse employment action[] for purposes of the federal
antidiscrimination statutes").  As with the other incidents, however, Savage has not alleged facts
tying the termination to her membership in a protected class or to protected activity.  Perhaps for
that reason, she acknowledges that her termination "is not part of this lawsuit."  Pl.'s Opp'n 16.
Accordingly, the Court will dismiss this count for failure to state a claim.

B.      Motion for Summary Judgment

The Court now takes up the government's motion for summary judgment, which
challenges Savage's claims regarding her nonselection for the Deputy Director position, her
allegedly unequal pay as compared to male colleagues, and her involuntary reassignments.
Because there appear to be factual disputes underlying some of these claims that might be
resolved through discovery, which has not taken place, the Court will deny the agency's motion
for summary judgment in substantial part, as explained below.

1.      Nonselection for Deputy Director Position

In Count Seven and elsewhere through the Complaint, Savage alleges that her
nonselection for the permanent Deputy Director position was impermissibly based on her age,
gender, race, and disability, as well as in retaliation for having filed administrative discrimination

complaints against the agency.  She maintains that she requested an alternative work schedule that would have allowed her to perform the duties of the position, but that she was unfairly told that such a schedule would be incompatible with the job.

"In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—*and should not*—decide whether the plaintiff . . . made out a prima facie case . . . ."  Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008).  "Rather, in considering an employer's motion for summary judgment . . . in those circumstances," the district court need resolve only whether the employee has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee."  Id.  "In evaluating whether the plaintiff defeats summary judgment, the Court considers all the relevant circumstances in evidence, including . . . any direct evidence of discrimination [or retaliation], any circumstantial evidence that defendant's proffered explanation is false, and any properly considered evidence supporting the employer's case."  Nguyen v. Mabus, 895 F. Supp. 2d 158, 174 (D.D.C. 2012).

Courts weigh relative qualifications differently in the discriminatory versus the retaliatory nonselection contexts.  In discriminatory nonselection cases, "a disparity in qualifications, standing alone, can support an inference of discrimination only when the qualifications gap is 'great enough to be inherently indicative of discrimination'—that is, when the plaintiff is 'markedly more qualified,' or 'substantially more qualified,' or 'significantly better qualified' than the successful candidate."  Hamilton v. Geithner, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (quoting Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006)).  By contrast, in retaliatory

nonselection cases, a plaintiff need not demonstrate that she was "significantly more qualified"

than the selectee. Román v. Castro, No. 12-cv-01321, 2016 WL 829874, at *12 (D.D.C. 2016).

Rather, she must demonstrate only that the "'relative difference' between her qualifications" and

those of the selectee "does not so greatly favor" the selectee "that no reasonable jury could

conclude [that she] would have been promoted but for the alleged retaliatory animus" of the

deciding officials. Id. (quoting Kilby-Robb v. Duncan, 77 F. Supp. 3d 164, 176 (D.D.C. 2015))

(internal quotation marks omitted).

      HHS insists that Savage's supervisor, John Petillo, selected Javier Lopez over Savage for

the Deputy Director position due to his superior qualifications and not for any discriminatory or

retaliatory reason.  The agency maintains that even though Savage had more years of federal

service, Lopez had more relevant experience and educational qualifications, as well as stronger

references.  See Def.'s Mot. Dismiss 35–36.  As for experience, HHS acknowledges that Savage

served as Acting Deputy Director, but argues that she did not exercise any of the position's

supervisory duties—such as hiring, firing, disciplining, administering performance appraisals,

approving or denying leave, or approving timecards—and that Petillo performed those duties

instead.  See id. at 5.

      Savage responds that she served in the acting position in its full capacity, whereas

Lopez's experience came from a different position, outside the agency.  See Pl.'s Statement

Material Facts 14.  She also claims that she did perform at least some supervisory functions in

the role—specifically, approving leave, conducting performance appraisals, and providing bonus

recommendations.[3]  See id. at 5, 19.  She acknowledges that she was not allowed to hire anyone,

---

     [3] Indeed, HHS filed a supplemental declaration executed by Mr. Petillo, in which he acknowledges that Savage prepared at least one performance appraisal and at least two performance ratings in 2010-2011.  See Suppl. Decl. Petillo ¶ 2.  Savage opposed the submission

but maintains that the need to fire never arose.  See id. at 5.  And she defends her educational

qualifications and asserts that HHS failed to check her references.  See Pl.'s Opp'n Def.'s Mot.

Dismiss 15.  Although it is not clear to the Court that Savage could demonstrate that she was

markedly better qualified than Lopez in order to meet the higher standard for discriminatory

nonselection, given the factual dispute over Lopez's and Savage's relative qualifications—and

taking the facts as alleged at this stage in the light most favorable to Savage—HHS has not

established, at this stage at least, that it is entitled to summary judgment on Savage's

nonselection claims based on her and Lopez's relative qualifications.

HHS also urges that Savage's nonselection cannot have been discriminatory or retaliatory

because Petillo offered the Deputy Director position to Savage first, provided that she work a

regular schedule, and she essentially disqualified herself from the position by insisting on an

alternative work schedule.  See Def.'s Mot. Dismiss 34, 37.  The Court discerns two plausible

counterarguments in Savage's filings—first, that she maintained an alternative work schedule

when she performed the position in an acting capacity and, therefore, that HHS's insistence that

it could not be done on such a schedule was pretextual; and second, that her need for an

alternative schedule must not have disqualified her from the position, because HHS deemed her

to have met the minimum requirements of the position at the initial screening stage.  See Def.'s

Statement Material Facts 10 n.4.  Because there appear to be genuine issues of material fact

surrounding the nonselection, the Court will deny HHS's motion for summary judgment as to

these claims.

---

of this supplemental declaration in support of Defendant's reply as untimely.  Per an extension
motion the Court granted on December 17, 2015, Defendant's reply was due December 18, 2015,
and the supplemental declaration was filed the next day, on December 19.  The Court will
construe Savage's opposition, filed December 22, as a motion to strike the declaration, but will
accept Defendant's filing and deny that motion.

2.     Equal Pay Act Claim

Count Eleven of the Complaint alleges that HHS violated the Equal Pay Act, 29 U.S.C.

§ 206(d), by paying Savage less than Lopez and less than her former Deputy Director Brian

Sparry.  See Compl. ¶ 99.  The Equal Pay Act prohibits employers from discriminating

> between employees on the basis of sex by paying wages to employees . . . at a rate
> less than the rate at which [they] pay[] wages to employees of the opposite sex . . .
> for equal work on jobs the performance of which requires equal skill, effort, and
> responsibility, and which are performed under similar working conditions.

The Act exempts from this rule pay differentials resulting from "a merit system" and "any other

factor other than sex."  Id.  The initial burden to prove wage disparity and job equality is on the

plaintiff."  Goodrich v. Int'l Broth. of Elec. Workers, AFL-CIO, 815 F.2d 1519, 1523 (D.C. Cir.

1987).  The burden then shifts to the defendant "to prove that unequal payments are made

pursuant to some legitimate, non sex-based factor."  Id. at 1523–24.

HHS contends that, while Savage describes various forms of allegedly unfair treatment in

her Complaint, she makes no allegation that either Sparry or Lopez was paid more than she was

for doing the same or similar work.  Def.'s Mot. Dismiss. 38.  While Sparry received higher

salaries than Savage, the agency maintains that this disparity was due to a "factor other than

sex," 29 U.S.C. § 206(d)(1), because he was classified at several pay-levels above Savage.  See

id. at 39–40.  Records produced by the agency, which Savage does not challenge, indicate that

Sparry was laterally hired into Savage's department in 2008 at pay-grade GS-15, step 5, with an

annual salary of about $130,000, see Decl. Thomas-Blackwell Ex. 7, and that Savage had not

achieved that grade and step even by 2011, when she was classified at grade GS-15, step 4, see

id. Ex. 6.  Because an Equal Pay Act claim requires demonstrating unequal pay for equal work, a

plaintiff must show that the higher-paid employees whose pay she compares against her own

were doing "substantially equal work . . . , the performance of which required substantially equal

16

skill, effort, and responsibility." Johnson v. Dist. of Columbia, 947 F. Supp. 2d 123, 133

(D.D.C. 2013) (quoting Smith v. Janey, 664 F. Supp. 2d 1, 13 (D.D.C. 2009)) (internal quotation

mark omitted).  As the uncontested record shows that Sparry had filled the permanent Deputy

Director position and was paid at a grade reflecting more years of experience than Savage had

accumulated, Sparry does not qualify as a comparator for Savage under this standard.

As for Lopez, HHS maintains that he and Savage received equal salaries at equal grade

and step pay-levels.  Def.'s Mot. Dismiss 39.  In support, the agency provides a declaration

executed by Belinda Thomas-Blackwell, Branch Chief with the Washington Human Resources

Center of HHS, as well as copies of Savage's and Lopez's Standard Form 50s, or Notifications

of Personnel Actions, the form submitted to federal employees whose salaries have been

changed.  This evidence bears out HHS's contention.  For example, it shows that Savage was

classified at grade GS-15, step 3 beginning in late 2010, and her annual salary was $132,009.

Lopez reached the same grade and step in late 2012 and received the same salary of $132,009.

Id.; see also Def.'s Statement Material Facts ¶¶ 6, 35 (citing Decl. Thomas-Blackwell Exs. 2–6,

10–14).

Savage responds that, while her salary might not have differed from that of her male

colleagues, her total pay was unequal to theirs when "bonuses, quality step increases, overtime

and such" are included.  Pl.'s Opp'n Def.'s Mot. Dismiss 4.  Quality-step increases are merit-

based and therefore not covered by the Act, but bonuses and overtime payments are considered

wages for purposes of the EPA.  See Musgrove v. Gov't of D.C., 775 F. Supp. 2d 158, 166 n.5

(D.D.C. 2011) (citing 29 C.F.R. § 1620.10).  Agency records, however, establish that Savage

was paid *higher* bonuses for lower performance ratings than Lopez.[4]  That leaves Savage's

allegation that she received unequal overtime payments as compared to Lopez.  Because the

Court cannot determine on the record at this stage whether Savage was paid less in overtime due

to her gender, it will allow Savage limited discovery as to that question.  The Court will grant

summary judgment to HHS as to all other aspects of Savage's Equal Pay Act claim.

3.     Claim Regarding Reassignments

In Count Twelve, Savage alleges that she was impermissibly reassigned to the Acting

Deputy Director position and later transferred outside of her division, in violation of various

federal statutes governing details, vacancies, and appointments within the civil service, see 5

U.S.C. §§ 3341–49; provisions governing assignments to and from states and local governments,

see id. §§ 3371–76; a provision prohibiting discrimination in the application of merit system

principles among federal personnel, see id. § 2302(b); the provision of Title VII prohibiting

discrimination in employment practices, see 42 U.S.C. § 2000e-2; two sections of the Code of

Federal Regulations governing the Senior Executive Service and reemployment under various

circumstances, see 5 C.F.R. §§ 317, 352; and various chapters of federal personnel manuals.[5]

See Compl. ¶ 101.

---

[4] Agency records show that, in each of 2009, 2010, and 2011, Savage received performance ratings of "Fully Successful," numerical scores ranging from 3.00 to 4.00, and bonuses ranging from 1.5% to 2% of her salary, or about $2,000 to $2,600.  Suppl. Decl. Petillo ¶ 5.  In 2011, 2012, and 2013, Lopez received ratings of "Exceptional" and "Achieved Outstanding Results," numerical scores ranging from 4.50 to 4.67, and bonuses including a quality-step increase, a time-off award, and 0.8% to 1.25% of his salary, or about $1,000 to $2,000.  Id.  Savage does not contest these figures.

[5] Savage offers no explanation for her assertion that HHS violated certain chapters of federal personnel manuals.

HHS moves for summary judgment on this count.  The agency contends that several of the provisions Savage cites are inapposite.  The Court agrees and will grant summary judgment with respect to Savage's claims relating to the following, as she has not alleged facts supporting their applicability: 5 U.S.C. § 3342, which has been repealed; id. § 3343, which concerns details to international organizations; id. §§ 3345–49, which concern temporarily filling vacancies left by officers "whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate," id. § 3345; id. §§ 3371–76, which concern assignments to and from states and local governments; 5 C.F.R. § 317, which concerns the Senior Executive Service; and id. § 352, which concerns reemployment following emergencies, details to international organizations, and other inapplicable circumstances.

HHS also contends that Savage cannot support a claim pursuant to 5 U.S.C. § 3341.  That section governs details within executive agencies and requires that they be made in writing and span no more than 120 days, see id. § 3341(b).  The agency claims that even though these procedural requirements were not met for Savage's assignment to the Acting Deputy Director position, HHS was not required to meet them because that assignment did not involve a change in duties and was therefore not a "detail" under the provision.  See Def.'s Mot. Dismiss 42–43. Given the factual dispute over Savage's duties as Acting Deputy Director, summary judgment on this claim is not appropriate.  The Court will dismiss the claim for lack of jurisdiction, however, as it is not clear from the statutory text that the government has waived its sovereign immunity with respect to this section, Savage does not contend that it has, and the Court can find no case addressing the question.  See Lane, 518 U.S. at 192 ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied. Moreover, . . . the Court will 'constru[e] ambiguities in favor of immunity[.]" (first alteration in

original) (citations omitted) (quoting United States v. Williams, 514 U.S. 527, 531 (1995))).

Moreover, the thrust of Savage's claims is that her federal employer discriminated against her, and "Title VII [is] the exclusive judicial remedy for claims of discrimination in the context of federal employment." Smalls v. Emanuel, 840 F. Supp. 2d 23, 29 (D.D.C. 2012) (quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976)).

Savage also claims that HHS violated 5 U.S.C. § 2302, which prohibits personnel practices including "a detail, transfer, or reassignment" on the basis of race, color, religion, sex, national origin, age, disability, and other protected categories. 5 U.S.C. § 2302(a)(2)(iv), (b)(1)(A)–(D). HHS moves for summary judgment on this claim on the same ground as with respect to the § 3341 claim—that the assignment to the Acting Deputy Director position was not a "detail." See Def.'s Mot. Dismiss 44 n.18. The Court's reasoning above applies equally here. While there may be a factual dispute as to whether Savage's duties differed in that capacity, there is no indication in the statutory text that Congress waived sovereign immunity with respect to this provision. Indeed, like FECA, this statute expressly places the power to ensure compliance with the statute's requirements with agency heads. See 5 U.S.C. § 8145; id. § 2302(c). The statute also states that it "shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through . . . any right or remedy available to an employee . . . under [Title VII]." Id. § 2302(d). The Court will therefore dismiss this claim for lack of subject matter jurisdiction.

With respect to Savage's Title VII claim, HHS contends that, because her duties did not change when she took on the Acting Deputy Director position, her assignment to that role cannot have been based on discriminatory reasons, and that Savage has failed to show pretext by alleging that the agency did not comply with various requirements concerning details. See Def.'s

Mot. Dismiss 44.  As for her reassignment out of her division, HHS alleges nondiscriminatory reasons having to do with organizational structure.  <u>See id.</u>  "Reassignment of duties may be an adverse action when the 'plaintiff has suffered [an] objectively tangible harm,'" <u>Mamantov v. Jackson</u>, 898 F. Supp. 2d 121, 127 (D.D.C. 2012) (alteration in original) (quoting <u>Brown v. Brody</u>, 199 F.3d 446, 457 (D.C. Cir. 1999)), "such as 'significantly diminished material responsibilities,'" <u>id.</u> (quoting <u>Baloch v. Norton</u>, 355 F. Supp. 2d 246, 256 (D.D.C. 2005)). While reassignment may constitute an adverse action even without wage loss, it is "generally not an adverse action" in that circumstance if it is not also accompanied by "qualitatively inferior work requiring . . . less skill or knowledge."  <u>Id.</u> at 128 (quoting <u>Baloch</u>, 550 F.3d at 1197) (internal quotation mark omitted).  In other words, lateral transfers may be considered adverse employment actions if they involve "significantly different responsibilities."  <u>Czekalski v. Peters</u>, 475 F.3d 360, 364 (D.C. Cir. 2007) (quoting <u>Forkkio v. Powell</u>, 306 F.3d 1127, 1131 (D.C. Cir. 2002)) (internal quotation mark omitted).  Because the facts are unclear as to what impact the reassignment to Acting Deputy Director had on Savage's duties, and because there is scant information in the record as to the impact of the second reassignment on her duties, the Court will deny summary judgment and permit discovery as to this claim.

### III.    Conclusion

For the foregoing reasons, the Court will grant Defendant's motion to dismiss with prejudice with respect to Counts Three, Four, Six, Eight, Nine, Fourteen, and Fifteen.  It will grant the motion to dismiss Count Five and portions of Count Two, the hostile work environment claim, as well as Count Ten without prejudice.  And it will deny summary judgment with respect to Count Seven and grant in part and deny in part summary judgment as to Counts Eleven and Twelve (as well as dismiss for lack of jurisdiction two of the claims in Count Twelve).  Finally,

it will deny what the Court construes as a motion by Savage to strike the supplemental

declaration of John Petillo.  An order accompanies this memorandum opinion.


 

 

 

 

 

 

 

 
_____

CHRISTOPHER R. COOPER
United States District Judge

Date:  \_\_August 3, 2016_____